# WINONA TECHNICAL INSTITUTE, AT INDIANAPOLIS. v. STOLTE, BY NEXT FRIEND.

[No. 21,231. Filed October 15, 1909.]

1. PLEADING.—*Complaint.—Master and Servant.—Fellow Servants.* —A complaint alleging that defendant through its general manager of engines and boilers hired the plaintiff's master to repair certain water pipes in one of defendant's boilers, that plaintiff was assigned by his employer as a "helper" therein, that he and another reported to defendant and were assigned to the making of such repairs, and that plaintiff while working inside of the boiler was permanently injured by the turning on of steam by defendant's servants, does not show that plaintiff was injured by the act of a fellow servant. pp. 44, 49.

2. MASTER AND SERVANT.—*Fellow Servant.—Application of Rule.*— The fellow servant rule is applicable only where the injuring and injured servants have a common master. p. 46.

3. PLEADING.—*Complaint.—Master and Servant.—Duties of Inspection.*—A complaint alleging that defendant employed plaintiff's master to do certain repair work on a water pipe in one of defendant's boilers, that the plaintiff and a fellow servant reported to do the work, that defendant's representative instructed them to enter such boiler and make such repairs, and that defendant's servants negligently turned on the steam, injuring the plaintiff, is not bad on the ground that plaintiff's failure to inspect the boiler, pipes and valves showed him guilty of contributory negligence. p. 46.

4. CHARITIES.—*Technical Schools.—Corporations.*—A corporation formed for the purpose of conducting technical schools, with power to charge tuition, board and school fees, its stockholders to receive no dividends therefrom, and its trustees at the expiration of its charter to convey, with provisions for subsequent grants in perpetuity, the whole property to another corporation with similar powers and for similar purposes, is not strictly a charitable or eleemosynary institution. p. 47.

5. CHARITIES.—*Liabilities.—Corporations.—Associations.*—A corporation owning and conducting a technical institute is liable to one invited upon its premises and injured by reason of defects in the premises, or by reason of the negligence of its servants. p. 48.

6. NEGLIGENCE.—*Non-Delegable Duties.—Breach.*—A corporation conducting a technical institute cannot absolve itself from liability by attempting to delegate its duty to exercise reasonable care toward one invited to make repairs upon its premises and injured by its servants' negligence. p. 49.

7. DAMAGES.—*Excessive.—Scalding.—Charities.*—A judgment for $6,500 is not excessive, where the defendant negligently turned live steam on the plaintiff while he was doing repair work in a boiler, thereby scalding his face, neck, legs, arms and hands, and permanently disabling him. p. 50.

8. TRIAL.—*Refusal to Withdraw Paragraph of Complaint.—Instructions.—Presumptions.*—Where two paragraphs of complaint differed only in naming different representatives of defendant as the persons ordering the repairs made, in the doing of which plaintiff was injured, an instruction that it was agreed that the one named in the second paragraph ordered the repairs, renders harmless a refusal to withdraw the first paragraph from the jury, the presumption being that the verdict was given on the second paragraph. p. 51.

9. APPEAL.—*Right Result.*—The judgment of the trial court will not be disturbed, where the right result was reached.　p. 52.

From Superior Court of Marion County (72,346) ; *Vinson Carter,* Judge.

Action by Charles Stolte, by his next friend, against the Winona Technical Institute, at Indianapolis. From a judgment for plaintiff, defendant appeals. *Affirmed.*

*Baker & Daniels,* for appellant.

*C. S. Denny, G. L. Denny* and *Horace L. Gould,* for appellee.

JORDAN, J.—Appellee, Charles Stolte, a minor, by his next friend, instituted this action in the lower court to recover from appellant for personal injuries sustained by appellee, and alleged to be due to the negligence of appellant. Upon the issues there was a trial by jury, and a verdict returned awarding plaintiff damages in the sum of $6,500. Over a motion for a new trial, judgment was rendered upon the verdict. From this judgment appellant prosecutes this appeal.

The complaint is in two paragraphs. By the first it is alleged that the plaintiff is nineteen years of age, and that William Stolte has consented to act as his next friend; that the defendant, on April 8, 1904, was incorporated under the laws of Indiana, and has its principal place of business in the city of Indianapolis; that on June 28, 1906, it owned, occupied and controlled a tract of land in said city, and numerous buildings thereon designed for its use in connection with the educational work which it was then conducting; that one of said buildings was a power-house, in which, side by side, were two steam-boilers, each being of 125 horsepower; that these boilers were used to generate steam to furnish heat, power and light for use by defendant in its educational work, and said boilers required the services of an engineer and a fireman; that on said day F. P. Corey was de-

fendant's engineer, and its fireman was one Fulton; that
at said time Corey had full power and authority to act for
said defendant in all matters connected with and proper to
be done in and about said power-house and boilers, including
the repairing of the same as needed; that it was his duty to
employ persons for said defendant to make such repairs,
and, in connection with said Fulton, to direct what work
should be done and what repairs should be made from time
to time in and about said power-house; that on said June
28, Corey and Fulton were in charge of said boilers, and
Corey, on behalf of defendant, employed Woollen & Callon,
plumbers and steam-fitters doing business in said city of In-
dianapolis, to make changes in and repairs to the feed-water
pipes passing through the inside of one of said boilers; that
Woollen & Callon then had in their employ one Frauer, an
experienced plumber and steam-fitter, and the plaintiff, an
apprentice, his "helper;" that Frauer and plaintiff were
sent by Woollen & Callon to do this work; that they reported
to Corey and asked for instructions, which he gave in the
hearing of Fulton; that the boiler to be repaired was empty,
it having before been put in condition to be entered and re-
paired; that the other boiler had on a full head of steam,
and the two were connected by a pipe, and both were
connected with one sewer under the floor, so that "opening
a certain valve on the one filled with steam, without previ-
ously closing the valve on the connecting pipe of the other
boiler, would cause the steam at once to force its way in a
large volume into the empty" boiler—all of which Corey and
Fulton knew; that, while Corey and Fulton were present,
the plaintiff was, as directed by Corey and Fulton, sent into
said empty boiler by his said foreman to do certain work in
connection with the making of said repairs, so ordered to be
done by Corey; that plaintiff entered said boiler through the
manhole at the top near one end thereof, when the same was
empty and in condition for said repairs to be made; that
while he was working in said boiler, near the end thereof

removed from said manhole, and without the giving of any notice or warning to him by any one, said Corey and Fulton carelessly and negligently opened the valve on the boiler that was filled with steam, while said valve on the pipe connected with the boiler in which plaintiff was working was also open, and thus caused a large volume of the steam confined in said first-mentioned boiler at once to force its way into said empty boiler in which he was working; that he was instantly enveloped with said steam, and before he could escape from said boiler was severely scalded on many parts of his body, to his great and permanent injury; that he has been, and will for a long time be unable to work, and has expended large sums for medical and surgical attention.

The second paragraph of the complaint avers virtually the same facts charged in the first, the only difference being that in the second paragraph it is alleged that the defendant had in its employ, as a general director of buildings and grounds, W. C. Smith, who was authorized by the defendant to employ contractors and workmen to repair said boilers and machinery when needed; that said Smith employed said Woollen & Callon to repair the feed-water pipes on the occasion in question.

To each of these paragraphs the defendant demurred for want of facts. Its demurrer was overruled, to which ruling it excepted. It then answered by the general denial, and also filed a special answer in two paragraphs. By these paragraphs it set up that it was incorporated under the voluntary association act of the State of Indiana, and set out in full its articles of association; that the object of said association, as shown by the articles, was "to establish, maintain and conduct at Indianapolis, Indiana, a general school or like schools, wherein, under evangelical Christian influences, the arts and sciences shall be taught in both practical and theoretical ways; and the proposed plan of doing business in carrying out said objects is to procure financial endowment for said association and corporation;" that it is shown in

and by said articles of incorporation that it is organized for pecuniary profit only in the sense that it will charge for tuition, board and like school fees, but it is not organized in the sense that its members or shareholders shall be entitled to receive dividends from its earnings and profits; that it is organized for philanthropic purposes, and its stock shall be used and accepted with the express agreement that all surplus earnings, income and profits shall forever remain the property of said association and corporation, and that no dividends or distributive parts of any such surplus shall ever be given or paid to the holders of the stock of said association; that upon the expiration of the term of its existence, which is fifty years, said corporation, and all property of whatsoever kind is possessed by it, shall be given absolutely and in fee simple to another corporate body having similar objects, purposes and policies to those of this association. The answer further averred that defendant had continuously from its organization conducted its school in all respects according to its articles of association,- and that the expenses thereof had largely been met by voluntary gifts from divers persons who made such gifts with full knowledge of the character and purposes of its organization, and that all moneys paid out had been expended for the salaries of teachers and other employes, and for adding to its equipment and the betterment of its educational plant.

For want of facts to constitute a defense, the plaintiff demurred to the paragraphs of this special answer, and his demurrer was sustained.

The following are the points made by appellant in its brief in respect to the insufficiency of the complaint. It is insisted that under the facts alleged in the first paragraph appellee must be held to have been, at the time he was injured, the servant of appellant company, and therefore Corey and Fulton were his fellow servants; and as the injury which appellee sustained is imputed to

the negligence of these latter servants, the fellow-servant rule is applicable, and precludes his recovery, and for this reason alone the demurrer to the first paragraph of the complaint should have been sustained.   It is further insisted that, under the facts averred in the second paragraph, the appellant, having furnished a safe place for appellee, its servant, to work in, it was the duty of Corey and Fulton, appellant's employes, to see that the place was kept safe, that all appliances were properly used while the work of repairing the boiler was in operation, and that the negligence charged, whereby the place became dangerous or unsafe, was, under the law, the negligence of appellee's fellow servants, and not that of appellant, and therefore the second paragraph of the complaint is not sufficient on demurrer.   It would be a great stretch to hold that, under the facts alleged in either paragraph of the complaint, appellee is shown to have been so far within the service of appellant company that the latter was his master, and that Corey and Fulton must be considered as his fellow servants.   Appellee, under the facts pleaded, is shown to have been in the employ of Woollen & Callon, the firm which contracted to repair appellant's boiler. It is true that it may be properly said that appellee and Frauer—both of whom were employes of this plumbing firm —were fellow servants, but so far as appellee and Corey and Fulton were concerned, they are shown to have been, at the time of the injury, the servants of different masters, and not the servants of a common master.   Appellee, at the time he was engaged in repairing the boiler, does not appear to have submitted himself to the control of appellant company, but still remained under the direction and control of Woollen & Callon, in whose service he was then engaged.   Appellant's counsel cite cases in which the servant of one master, with the consent of such servant, either express or implied, is loaned to another master to perform some particular employment. In such cases it is held that the servant so borrowed becomes

for the time the servant of the borrowing master, and is subject to the control of the latter, and if, because of the negligence of a servant of the borrowing master, he receives injuries in such employment, he cannot recover therefor. These cases, however, under the facts in the case before us, lend no support to appellant's contention. As the authorities affirm, in order that the fellow-servant rule should

2. apply, it is necessary that the complainant and the servant whose negligence causes the wrong complained of should have a common master. *Sullivan* v. *Tioga R. Co.* (1889), 112 N. Y. 643, 20 N. E. 569, 8 Am. St. 793; *Sanford* v. *Standard Oil Co.* (1890), 118 N. Y. 571, 24 N. E. 313, 16 Am. St. 787; *Johnson* v. *Netherlands, etc., Navigation Co.* (1892), 132 N. Y. 576, 30 N. E. 505; *Devlin* v. *Smith* (1882), 89 N. Y. 470, 42 Am. Rep. 311; *Catawissa R. Co.* v. *Armstrong* (1865), 49 Pa. St. 186; *Johnson* v. *Spear* (1889), 76 Mich. 139, 42 N. W. 1092, 15 Am. St. 298; 12 Am. and Eng. Ency. Law (2d ed.), 992, 995, and authorities cited; 2 Jaggard, Torts, pp. 1033, 1035, 1036; 4 Thompson, Negligence (2d ed.), §4996; 1 Shearman & Redfield, Negligence (5th ed.), §224. In fact the fellow-servant principle can only be applied where the servant sues his own master. 2 Jaggard, Torts, pp. 1033, 1034.

It is next claimed that it was the duty of Frauer to inspect the various parts of the place where he and his helper were to

3. work, including valves on the pipes, etc., and to know that every part thereof would remain safe during all of the conditions that might obtain while the south boiler was being used in storing steam. It is said there is no allegation that such inspection was made, and therefore it is argued that this renders the complaint deficient. This contention is untenable, for the facts alleged in the complaint disclose that Frauer and appellee, when they were sent by their employer to repair the boiler, reported to Corey, and asked him for instructions in regard to the repairs to be made. Corey, as it appears, showed them the boiler which

was to be repaired, and gave them, in the presence and hearing of Fulton, full instructions what to do.   The boiler at that time was empty, as, prior to the arrival of appellee and Frauer, it had been put in a condition to be repaired.   Under the circumstances it was the duty of neither of the latter parties to go upon a tour of inspection in order to ascertain that all the valves, pipes and appliances connected with the boilers, which were under the operation and control of Corey and Fulton, were safe, and would so remain during the time the repairs were being made.   Appellee and Frauer were not required to anticipate negligence on the part of either appellant's engineer or its fireman.   In the absence of any notice to the contrary, they had the right to assume that these servants of appellant would discharge their duties, and, in the operation of the engine during the time the repairs were being made, they would exercise reasonable care so as not to injure either appellee or Frauer.   2 Jaggard, Torts, p. 970; Dresser, Employers' Liability, p. 528;   *Baltimore, etc., R. Co.* v. *Spaulding* (1898), 21 Ind. App. 323.

It is next insisted that the court erred in sustaining the demurrer of appellee to the second paragraph of appellant's special answer, because the facts therein alleged, and 4. as shown by the articles of association filed therewith, establish that appellant is an eleemosynary or charitable institution; that the principle of *respondeat superior* does not apply to benevolent or charitable institutions, such as schools, hospitals and colleges.

We cannot sanction the contention that appellant is strictly a charitable institution.   As disclosed by its articles of association, the term of its existence is fixed at fifty years. The amount of its capital stock is $100,000, divided into shares of $100 each.   It charges persons who become students therein tuition, board and school fees.   As said by the court in respect to Thiel College, in the case of *Thiel College* v. *County of Mercer* (1882), 101 Pa. St. 530, 533:   ''What kind of a charity is that in which every one pays, either in

money or work, for what he gets, whether it be food or education?'' Appellee was not a student at appellant's institution at the time he was injured, hence the case of *Parks* v. *Northwestern University* (1905), 218 Ill. 381, cited by appellant, is not applicable to the question here involved. In the following cases charitable corporations or institutions were held liable to persons who were invited upon the premises where they were injured by reason of defects in the premises or through the negligence of the servants of the corporation. *Blaechinska* v. *Howard Mission, etc.* (1890), 56 Hun 322, 9 N. Y. Supp. 679; *Donovan* v. *Board, etc.* (1878), 55 How. Pr. (N. Y.) 176; *Woods* v. *Trinity Parish* (1893), 21 D. C. 540; *Stewart* v. *President, etc.* (1866), 12 Allen 58; *Davis* v. *Central Congregational Soc., etc.* (1880), 129 Mass. 367, 37 Am. Rep. 368; *Brown* v. *South Kennebec, etc., Soc.* (1859), 47 Me. 275, 74 Am. Dec. 484; *Rector, etc.,* v. *Buckhart* (1842), 3 Hill 193. See, also, *Whalen* v. *Centenary Church, etc.* (1876), 62 Mo. 326; *Magner* v. *Frankford Baptist Church* (1896), 174 Pa. St. 84, 34 Atl. 456; *Rogers* v. *Toronto Public School Board* (1896), 23 Ont. App. Rep. 597.

We pass, however, without deciding, the question raised in regard to appellant's being a charitable institution, for, under the facts, it is not material. As shown, appellee was sent by his employer—the firm of Woollen & Callon—to assist in repairing the boiler in question. He was on appellant's premises by reason of its express invitation, made to him through his employer. Appellant in its corporate entity or capacity was the owner of the boiler which it desired to have repaired. Through its agents, it directed the repairs to be made. Having invited appellee upon its premises to make the repairs, it, in its corporate capacity, owed him the duty, while he was so engaged, to exercise reasonable care not to injure him. This duty it delegated to its servants, Corey and Fulton, in charge of the engine and boiler. This duty

these servants failed to perform. Appellant could not
6. delegate the duty and thereby escape liability for
·damages resulting from the breach thereof. This
proposition is well affirmed by the authorities. *Mersey
Docks* v. *Gibbs* (1865), 11 H. L. Cas. *686, L. R. 1 H. L. 93;
*Powers* v. *Massachusetts Hospital, etc.* (1901), 109 Fed. 294,
47 C. C. A. 122, 65 L. R. A. 372; *Hearns* v. *Waterbury Hospital* (1895), 66 Conn. 98, 33 Atl. 595, 31 L. R. A. 224;
*Foreman* v. *Mayor, etc.* (1871), L. R. 6 Q. B. *214; *Coe* v.
*Wise* (1864), 5 B. & S. 440; *Winch* v. *Conservators of the
Thames* (1872), L. R. 7 C. P. 458; *Haggerty* v. *St. Louis,
etc., R. Co.* (1903), 100 Mo. App. 424, 74 S. W. 456;
*Blaechinska* v. *Howard Mission, etc., supra; Donovan* v.
*Board, etc., supra; Woods* v. *Trinity Parish, supra; Stewart*
v. *President, etc., supra; Davis* v. *Central Congregational
Soc., etc., supra; Brown* v. *South Kennebec, etc., Soc., supra;
Rector, etc.,* v. *Buckhart, supra; Gilbert* v. *Corporation of
Trinity House* (1886), L. R. 17 Q. B. D. 795; *Nims* v. *Mt.
Hermon Boys' School* (1893), 160 Mass. 177, 35 N. E. 776, 22
L. R. A. 364, 39 Am. St. 467; *Mulchey* v. *Methodist, etc.,
Soc.* (1877), 125 Mass. 487.

Under their argument on the alleged error of the court in
overruling the motion for a new trial, counsel insist that the
verdict is not sustained by sufficient evidence. Under
1. this insistence counsel for appellant reaffirm that
the negligence which resulted in the injury to appellee was due either to the omission of Frauer to examine
the premises before he sent appellee into the boiler to make
the repairs, or to the act of Corey and Fulton in blowing off
the steam in the south boiler. Therefore it is contended that
in either case the negligence was that of a fellow servant,
and therefore defeats a recovery in this action. There is no
evidence to justify this contention. The evidence fully discloses that the injury sustained by appellee was wholly due to
the negligence of the servants of appellant, Corey and

Fulton, as charged in the complaint, and we reaffirm that under the facts and the law applicable thereto they were not the fellow servants of appellee.

We have fully examined and considered the evidence in the record, and are satisfied that it at least fully establishes the facts alleged in the second paragraph of the complaint and supports the verdict of the jury upon every material point. We do not deem it essential, however, to make a statement of the evidence in detail, or point out wherein it supports the verdict. The contention that the damages assessed appear at first blush to be excessive and outrageous, and that it must be apparent that some improper element influenced the jury in making the assessment, is untenable and finds no support under the evidence. The evidence shows that the injury complained of was wholly due to the negligence of appellant, as charged in the complaint, committed by it through its servants in question, and there is no room for it to escape liability under the facts established in the case. It is shown that the suffering of the plaintiff was very agonizing. In the language of witnesses, his skin and flesh in places were "simply cooked." For some weeks after the accident his arms were said to have looked like raw beefsteak, and when he got out of the boiler his skin was hanging in strings down his hands, arms and face. For more than a week he was unable to talk. The skin on his face was so cooked that his eyebrows and eyewinkers fell out. The pain was so intense that after he was taken to the hospital in the city of Indianapolis it was found necessary to administer morphine every three or four hours to relieve his pain. The only food which he could take was that of a liquid nature, which had to be administered to him through a tube while he was in the hospital. Doctor Bigger, a witness on the trial, testified that upon an examination of appellee after the accident, he found that his face, neck, hands, arms and legs were badly scalded, in fact all the exposed portions of the body were in that condition, and he was suffering intense pain,

and was very severely injured. The doctor said that the "skin was simply cooked, and in places had curled up and broken away from the underlying tissues." His eyesight appears to have been permanently injured by the accident. Much evidence in regard to the nature of the injury and the manner in which he was affected thereby was given at the trial. We discover nothing in the record which can be said to justify appellant's claim that the damages are excessive. Before he was injured, the evidence shows that appellee was a strong, vigorous young man, with perfect eyesight. He is. unable to perform any work, and the testimony establishes that he has been permanently injured and disabled. .

It is contended that the court erred in not withdrawing, at the request of appellant, the first paragraph of the complaint from the jury, for the reason that in the first paragraph it is charged that F. P. Corey acted for the defendant in employing Woollen & Callon to repair the boiler, while in the second paragraph it is averred that W. C. Smith acted for the defendant in contracting with said firm to make the repairs. It is further stated that as a matter of evidence upon which the case was submitted to the jury, the parties stipulated and agreed that said W. C. Smith, on behalf of the defendant, employed the firm of Woollen & Callon to make the repairs in question. It is claimed that the parties by this agreement stipulated and agreed that the material fact averred in the first paragraph in regard to the employment of the firm in question by Corey was not true, and that thereby the first paragraph was virtually withdrawn. It is true that the court, in its charge, informed the jury that the complaint was in two paragraphs, and that the only material difference in the two paragraphs was that in the first it was alleged that F. P. Corey acted for the defendant in employing said Woollen & Callon to repair the boiler, while in the second paragraph it was averred that W. C. Smith acted for the defendant in contracting for the repairs. If the parties by the stipulation in question agreed that W.

C. Smith, the agent of the defendant, employed Woollen & Callon, as charged in the second paragraph, and that this firm was not employed by Corey, as alleged in the first, then, the first paragraph in respect to this fact stood unproved, and we must assume that the jury, in considering the case, was controlled by the agreement in question, which had been introduced as evidence in the case, and therefore did not regard the first paragraph of the complaint, which stood unproved as to the averment that Corey made the employment, but based its verdict wholly upon the second. It is evident, therefore, that appellant was not harmed by the court's refusal to charge the jury, as requested by appellant, that the appellee had failed to prove the necessary allegations of the first paragraph of the complaint, and that therefore this paragraph was withdrawn.

Some other minor criticisms are urged against some of the court's instructions, but these objections, as we view them, are not well taken, and may be said to be devoid of merit. This case appears to have been fairly tried in the lower court, and, under the facts and the law applicable thereto, a correct result seems to have been reached.

Judgment affirmed.