PATERLINI et ux. v. MEMORIAL HOSPITAL ASS'N OF MONONGAHELA CITY et al.

(District Court, W. D. Pennsylvania.    October Term, 1914.)

No. 1201.

CHARITIES 45(2)—HOSPITALS—ACTIONS FOR DEATH—SUFFICIENCY OF EVIDENCE.

> Evidence *held* insufficient, as matter of law, to sustain allegations of negligence against a hospital association in an action to recover for the death of a patient which resulted from poison given to him by a nurse through mistake, under the rule that in case of the negligence of a servant while engaged in administering a charity the doctrine of respondeat superior does not apply.

> [Ed. Note.—For other cases, see Charities, Cent. Dig. § 103.]

At Law. Action by John Paterlini and wife against the Memorial Hospital Association of Monongahela City, Pa., and others. Judgment for defendants, and plaintiffs move for a new trial. Denied.

For prior opinions, see 229 Fed. 838, and 232 Fed. 359, 146 C. C. A. 407.

Arthur O. Fording, of Pittsburgh, Pa., for plaintiffs.

McIlvain, Murphy, Day & Witherspoon and Andrew M. Linn, all of Washington, Pa., for defendants.

THOMSON, District Judge. We are asked in this case to grant a new trial, on the ground that the court erred in giving binding instructions in favor of the defendants when the case was one for the jury. Although the facts were not in dispute and the case rested on the evidence adduced by the plaintiff, it is insisted that these facts established negligence on the part of defendants, or at least that reasonable men might differ upon the question as to whether there was negligence or not, and therefore, that the determination of the question was for the jury. This general principle, under the authorities, may be conceded; but in order to determine whether negligence has been shown, or facts from which negligence can be fairly inferred, it is necessary to consider both the pleadings and the evidence offered in support of the plaintiffs' averments. Much testimony was admitted by the court over defendants' objection, as I was anxious in view of the opinion of the Circuit Court of Appeals on the demurrer (232 Fed. 359, 146 C. C. A. 407) to give the plaintiffs every opportunity to produce all their evidence bearing on the question of negligence, reserving, of course, the right to pass upon its competency and legal effect when the testimony was all in. This case is not so exceptional in its character that it is not to be governed by the well-recognized principles of pleading and practice. The defendants in this case, as in every other, were entitled to be informed by the plaintiffs' declaration of the negligence which was charged against them, so that, being informed with reasonable exactness, they might be able to properly prepare their defense thereto,

When the negligence is defined in the declaration with that definiteness which the law contemplates and intends, it becomes a guide in determining the competency of the evidence, and evidence which does not tend to establish the particular negligence charged is not competent, and should be excluded. With this principle in mind, and that other, that the allegata and probata must agree, let us look briefly at the negligence charged and the proof offered in support of it.

Turning to the amended declaration which took the place of the original, the former being entirely too vague and indefinite, it is admitted that the decedent's death was directly caused by the negligence of the nurse charged with the care of the patient, in attempting to administer some medicine prescribed for him she negligently gave to the patient instead a dose of bichloride of mercury. This averment is followed by some charges of negligence on the part of the defendants, so very general in their nature as to give the defendants no notice of the character thereof. These averments are as follows:

"(1) The said defendants were grossly negligent in the management of the said hospital in keeping such violent poison as bichloride of mercury in such circumstances as to allow a nurse, whether careful or negligent, to make such a mistake.

"(2) The said defendants were grossly negligent in so conducting the process of removing the activities of the said hospital from one building to another as to make such mistake possible.

"(3) The said defendants were negligent in the employment of persons charged with the direct management of the said hospital, and especially those charged with the duty of its said removal.

"(4) The said defendants were negligent in failing to provide for the said patient a safe environment for his care."

The pleader, recognizing that these averments were too general to meet the requirements of pleading, undertook to specify the actual negligence relied upon as follows:

"To be more specific in respect to the said negligence of the defendants: Whereas it is a custom among hospitals for those persons who are invested with the management thereof to provide in each such hospital a separate cupboard or closet for the safe-keeping therein of such poisons as must be had, and for keeping them separate and apart from all other drugs, medicines, and supplies, and to keep such cupboard or closet securely locked with a single key thereto in the custody of some one person charged with the responsibility thereof, so that no physician or nurse, either by design or mistake, could obtain any poison in such hospital without applying therefor to the custodian thereof, by which customary precaution the danger of accident or mistake in the use of poisons is reduced to a minimum; and whereas the said custom has prevailed throughout the commonwealth for many years, and at all the times herein referred to was a well-known custom and universally observed; and whereas these defendants, prior to the times herein referred to, had themselves observed the said custom; and whereas the observance of the said custom and the separate storage of poisons under lock and key is always a simple and obvious expedient, and a well-known precaution, and is at all times convenient, inexpensive and efficient—yet, notwithstanding the said universal custom and their own former observance thereof, and notwithstanding the increased and unusual danger involved in a neglect of such custom during the process of removal of the said hospital from one building to another, and notwithstanding all the premises, the said corporate defendant and its said trustees, and each and every of them, did so grossly neglect the said customary precautions as that in the said removal

they allowed the stock of poisons then on hand to be taken out of their accustomed depository for the purpose of removal, and to be removed without being thus protected, and after removal to the said new building to be left without such separate care and without the usual protection of lock and key for a long period of time, to wit, for two days; and the said stock of poisons thus on hand for use in said hospital had been thus negligently allowed to be without the said customary protection for two days before the occurrence of the said mistake which caused the death of the patient aforesaid."

Here, then, we have the charge that there existed the well-known and universally observed custom in hospitals of keeping under lock and key all poisons which must be had, separate and apart from all other drugs, medicines, and supplies. That this condition was not only well known, but that previous to the time of the accident had been observed by the defendants; that they neglected the said customary precautions, and in the removal of the hospital took the poisons out of their accustomed depository in the removal, and left them without the usual protection of lock and key for a long time, to wit, the period of two days. This is the negligence charged against the defendants, and the ground for their liability to answer for the negligent act of the nurse in administering the poison by mistake.

The proofs wholly fail to establish these allegations of negligence. Plaintiffs' undisputed testimony shows:

First. That in the old hospital the nonpoisonous medicines were kept in an unlocked closet. In the new hospital they were kept in a closet, one on each floor, under lock, the key being in the possession of the particular nurse in charge of that floor.

Second. Both in the old and the new hospital, the poisons, in tablet or crystalline form, were kept in a stock or supply room, which was kept locked, the key being in the possession of the superintendent.

Third. In both the old and the new hospital, the poisonous solutions which were used, not for medicines, but for external application in connection with operations, were kept in the operating room in bottles properly labeled, not under lock, for ready use in emergencies, and with these were certain other solutions nonpoisonous, such as salts used for like purposes. Not a word of testimony was offered to show that any custom to safeguard the handling of poisons existed anywhere, that was not observed by the defendants, and the superintendent, whom the plaintiffs called and who was conceded of record to be competent, and who had experience in Europe as well as in this country, testified that she never knew of the solutions used in the operating room of any hospital to be kept under lock and key, stating in connection with this testimony her reason therefor. In other words, plaintiffs' proof wholly failed to sustain their allegations. Without stopping to consider the authorities, I think they all agree that for the negligence of a servant while engaged in administering a charity, the doctrine of respondeat superior does not apply. Certainly not, unless there were shown to be negligence in the selection of the servant. Here it is conceded that the negligence of the nurse was the direct cause of the death. There is neither allegation nor proof of any negligence in the selection of the nurse. It is conceded that the superintendent was com-

petent, and shown that she was a person of wide experience. In her care were placed the internal operations of the hospital, including the selection and charge over the nurses. All the medicines intended for internal use, both poisonous and nonpoisonous, were kept in closets under lock and key; those intended for external application, to be used under the direction of physicians and trained nurses, were kept there, as elsewhere, in the operating room for ready use. No medicines were kept in the operating room. The nurse whose neglect caused the injury, without right or authority went to the operating room, saw there a bottle of "mag" salts and a bottle of bichloride of mercury, each bottle properly labeled, and thus she was not deceived as to the contents of the bottles. Acting thus without right or authority, in searching for medicines where she had no right to go, and then blundering in picking up the wrong bottle after its label had informed her of its deadly contents, it becomes clearly apparent that the distressing accident was due solely and only to the negligence of the nurse.

If the question of negligence under the above facts were submitted to the jury, it is possible that a jury might reach another conclusion. This chiefly because there would be a natural tendency to charge against the defendants the negligence of the nurse; to hold the employer liable for the acts of the employé. But, applying the law as I understand it to be to the undisputed facts which are relevant and material under the issue raised by the pleadings, I am of opinion that the negligence charged has not been established, and that it was my duty to so declare as a matter of law.

The motion is therefore refused.