## St. Vincent's Hospital v. Stine.

[No. 24,077. Filed June 26, 1924. Rehearing denied November 14, 1924.]

1. PLEADING.—*Statement of Conclusions.—Failure to Object.— Waiver.*—In view of §343a Burns' Supp. 1921, Acts 1915 p. 123, even if an objection that a special answer stating that a hospital was a charitable institution and failing to set out in full the articles of incorporation, was bad as stating conclusions, was a tenable objection, it was waived by the failure of the appellant to make a motion to have the answer made more specific and by the fact that the memorandum accompanying the demurrer to the answer did not raise the point that the answer was insufficient on any such ground. p. 357. ·

2. CHARITIES.—*Charitable Association.*—*Facts Evidencing Character.*—An association incorporated under the act of 1881, Acts 1881 p. 712, §3502 R. S. 1881, which was an amendment of the act of 1867, Acts 1867 p. 223, and having for its stated object the founding of a hospital for the sick and destitute, is a charitable association even though "pay" patients are received, the evidence being that much of its property was donated to be used for charitable purposes and that it has been open at all times for the reception of persons who are destitute and unable to pay. p. 358.

3. CHARITIES.—*Charitable Associations.*—*Liability for Negligence of Servants.*—A charitable association is not liable to a beneficiary of its bounty for injuries caused by the negligence of one of its servants when it has shown due care in the selection of the servant. p. 358.

From Hendricks Circuit Court; *Zimri E. Dougan,* Judge.

Action by Robert Stine against St. Vincent's Hospital. From a judgment for the plaintiff, the defendant appeals. *Reversed.*

*Bernard Korbly, John G. McNutt* and *George W. Brill,* for appellant.

*Charles M. Reagan, Beckett & Beckett* and *Thad S. Adams,* for appellee.

GAUSE, J.—Appellee sued appellant to recover damages for personal injuries alleged to have been sustained as the result of the negligence of a nurse of appellant, while appellee was in appellant's hospital as a patient.

The third paragraph of complaint, upon which the cause was tried, alleges that appellant is a corporation duly organized under the laws of the State of Indiana and conducts a hospital in the city of Indianapolis for the treatment of patients requiring operations and other medical attention.

That appellant has authority to hire agents and pay them out of moneys derived from charities, bequests and pay patients.

That it has power to make contracts with patients for services and treatment in such hospital and derives its funds largely from charges and fees for services to patients.

That appellee went to said hospital for an operation and entered into a contract whereby appellant, in consideration of the sum of $20 per week, agreed to furnish appellee a room in said hospital, together with good and skillful nurses to take care of and nurse him, and that it then became the duty of appellant to exercise reasonable care and skill to take care of and nurse appellee while he was under treatment in said hospital.

It is then alleged that while under an anaesthetic, administered for the purpose of performing said operation, a servant of appellant who was employed by it to care for the patients, negligently placed in the bed where appellee was confined, a bottle filled with water which was too hot for such purpose and placed the same against the foot of appellee, and that appellee's foot and leg were burned thereby to such an extent that his leg had to be amputated in order to preserve his life.

Appellant filed an answer in denial and also a special answer, denominated a fourth paragraph of answer to the third paragraph of complaint, and which alleged in substance that appellant was incorporated on July 28, 1884, under the laws of Indiana. That the object of its organization, as stated in its articles of association, is as follows: "The object of said association or corporation is to found and sustain a hospital in the City of Indianapolis, Marion County, Indiana, for the relief of the sick and destitute and in aid of benevolent and charitable purposes."

That since its organization it has owned and operated a hospital in said city for the relief of the sick and destitute and in aid of benevolent and charitable pur-

poses and maintained and operated said hospital as a charitable institution. That it has no capital stock and pays no dividends and has not been and is not operated for profit.

That it is managed and operated by a number of women belonging to the society of the Daughters of Charity of St. Vincent De Paul and known as Sisters of Charity and who give their time, service and labor in the management and operation of said hospital without pay or remuneration and not for profit.

That much of the property, including the buildings and equipment used by appellant was donated by charitably inclined persons for the purpose of being used for charitable purposes.

That some of the persons who become patients at said hospital pay for the board, lodging and other services rendered them, but that at all times said hospital is open for the reception of any person of whatever color, race or religion, who is destitute or unable to pay, and that it has many patients who are unable to pay and have not paid and are not expected to pay appellant for said services, but that such services are furnished gratuitously.

That the primary purpose for which said hospital is maintained is to render such gratuitous service to those who are destitute and unable to pay.

That all money received from pay patients is placed in a common fund with all money received as donations and bequests from charitably inclined persons, and the expenses of furnishing services to both the destitute and the pay patients are paid out of said common fund.

Facts are then alleged showing that the said servant of appellant whose negligence is alleged to have caused the injury to appellee was a skillful and experienced nurse and that appellant used due care in selecting him.

A demurrer was sustained to this paragraph of answer.

A trial by jury resulted in a verdict for appellee, upon which judgment was rendered.

Appellant filed a motion for a new trial, which challenged the sufficiency of the evidence, the correctness of certain rulings upon the admission and rejection of evidence and also assigned certain alleged misconduct of one of appellee's counsel during the trial.

The motion for a new trial was overruled.

The principal question for decision, and which arises both because of the sustaining of the demurrer to the special answer and the overruling of the motion for a new trial, is whether a corporation organized and operating a hospital in the manner alleged in the special answer is liable for an injury to one of its patients caused by the negligence of its employees.

Appellant contends that it is a charitable hospital and that such an institution is not liable in damages for an injury to a patient resulting from the negligence of its servant.

Appellee contends, first, that the facts alleged in said answer do not show that appellant is operating a charity; and, second, that if it is, such an institution is liable for the negligence of its employees the same as any other corporation or individual.

It is necessary first to consider whether under the facts alleged in the special answer (and appellant offered evidence to prove the allegations thereof, but the offer was refused), appellant is a charitable institution.

Appellant was organized in 1884. It is sued as a duly organized corporation. The only law existing at such time which authorized the organization of any such an association as appellant was the act of 1881, Acts 1881 p. 712, §3502 R. S. 1881, which was an amendment of the act of 1867, Acts 1867 p. 223. Under this stat-

ute any number of persons were authorized to associate themselves by written articles, for either one of several specified purposes.

The only purpose specified in said statute under which appellant could have been organized with the object stated in its articles is under the fifth subdivision of said statute which authorized the forming of charitable associations or orders.

As heretofore set out, the purpose of said association as stated in its articles is as follows: "The object of said association or corporation is to found and sustain a hospital in the City of Indianapolis, Marion County, Indiana, for the relief of the sick and destitute and in aid of benevolent and charitable purposes."

Said appellant has no capital stock and pays no dividends and its term of existence is not limited.

It is alleged that a large part of its property, including the buildings and equipment used as a hospital, was donated by charitably inclined persons for charitable purpose alone. It is operated by persons who serve without pay. Hospitals maintained, not for pecuniary profit, but to relieve the destitute and deserving are generally classed as public charities.

It has been said that the true test of an institution is its origin and objects. If it is founded on donations and has for its purpose the accomplishment of a charity by the distribution of alms to the needy, or the relief of the destitute and distressed, it is most unquestionably eleemosynary. *American Asylum* v. *Phoenix Bank* (1822), 4 Conn. 172, 10 Am. Dec. 112; *Fire Ins. Patrol* v. *Boyd* (1888), 120 Pa. 624, 15 Atl. 553, 1 L. R. A. 422, 6 Am. St. 745.

It was held by this court in the case of *Richards* v. *Wilson* (1916), 185 Ind. 335, which was a case to determine the character of the Winona Technical Institute, that an institution which arose out of donations

for a charitable purpose and is carrying out that purpose, does not lose its character as a charitable institution .because it receives a revenue from some of the recipients of its bounty.

The Supreme Court of Ohio, in considering a similar question regarding the Protestant Hospital Association of that state in a case parallel to the case at bar and in which an answer had been filed setting up facts similar to the special answer in this case, used this language: "We think this hospital, owned and operated in the manner set out, is a public charity, and this without reference to whether some of the patients are what are termed pay patients or not." *Taylor, Admr.*, v. *Protestant Hospital Assn.* (1911), 85 Ohio 90, 96 N. E. 1089, 39 L. R. A. (N. S.) 427.

Appellee urges the case of *Gitzhoffen* v. *Sisters of Holy Cross Hospital Assn.* (1907), 32 Utah 46, 88 Pac. 691, 8 L. R. A. (N. S.) 1161, as a case strongly supporting the proposition that appellant is not a charitable institution. In that case which was decided in 1907, the hospital association had been organized under the laws of Indiana and it appears that in the articles of association its object was stated to be to maintain and operate hospitals, but it is not stated, as in the case at bar, that its object was to relieve the destitute or that it was organized in aid of benevolent or charitable purposes. There was nothing in the articles of the association in the Utah case which indicated it was in any sense organized for any charitable purpose.

It was also stated in that case that the law under which it was incorporated required "that if the corporation is organized for pecuniary profit, it must set forth in its articles the amount of the capital stock and the number of shares into which the same is to be divided, with the amount of each share, which shall not exceed $100. This the defendant did by stating its

capital stock to be $10,000, divided into 10,000 shares of $1 each. The principal features of charitable corporations are 'that they have no capital stock, and that their members can derive no profit from them.' * * * The law also required the term of existence of the corporation to be stated, which, if organized for pecuniary profit, shall not exceed fifty years."

The term of existence was stated as fifty years. Such corporation evidently was organized under the acts of 1901 of this state, Acts 1901 p. 289, for said act contained the provisions referred to in the opinion of the Utah court.

It was then held that such articles upon their face purported to create an organization for pecuniary profit.

Such cannot be the purport of the articles of association of appellant, which has no capital stock and the object of which is stated to be for the relief of the sick and destitute and in aid of benevolent and charitable purposes.

We do not see that the Utah case relied upon by appellee sustains his contention.

Appellee insists that in determining the character of appellant we can only look to the law under which it was organized and its articles of association.

If this be true, then it appears that under the law existing at that time the only provision authorizing an association for any such purpose as stated in its articles of association was the provision authorizing the incorporation of charitable associations or orders, so that under the articles of appellant, in view of the law then existing, it is a charitable corporation.

In what appellee calls "Additional Authorities and Supplemental Brief," which was filed after the

1. cause was orally argued and after the time for filing briefs had expired, and which is in fact a

brief, appellee, in addition to further discussing the cases cited in his original brief and his oral argument, seeks to make the new point that the special answer is bad because it does not set out in full the articles of association of appellant. The part of such articles stating the object of the corporation is set out and the date of its incorporation is stated. Some of the allegations relating to the method of its operation and the nature of the corporation may be in the form of conclusions, but there was no motion made to require appellant to be more specific and, furthermore, in the memorandum which appellee filed with his demurrer to said answer no point was made that the answer was insufficient because it did not set out a complete copy of said articles. Any such objection, if tenable, has been waived. §343a Burns' Supp. 1921, Acts 1915 p. 123.

In our opinion the facts stated in the special answer show appellant to be a charitable association. The following cases support this position: *Sherman* v.
2. *Congregational Home Missionary Soc.* (1900), 176 Mass. 349, 57 N. E. 702; *Farrigan* v. *Pevear* (1906), 193 Mass. 147, 78 N. E. 855, 7 L. R. A. (N. S.) 481, 118 Am. St. 484, 8 Ann. Cas. 1109; *Adams* v. *University Hospital* (1907), 122 Mo. App. 675, 99 S. W. 453; *Taylor, Admr.,* v. *Protestant Hospital Assn., supra; New England Sanitarium* v. *Stoneham* (1910), 205 Mass. 335, 91 N. E. 385; *Barnes* v. *Providence Sanitarium* (1921), 229 S. W. (Tex.) 588; *Bishop Randall Hospital* v. *Hartley* (1916), 24 Wyo. 408, 160 Pac. 385, Ann. Cas. 1918E 1172.

Is such a charitable institution liable to a beneficiary of its bounty for the negligence of one of its servants? This question has been answered in the negative
3. by the overwhelming weight of authority in this country. We have been greatly aided by the

able briefs of counsel on both sides and we find that in at least twenty of the states and in the Federal Courts the rule has been declared that a charitable corporation, such as appellant, is not liable to a recipient of its services for damages caused by the negligence of its employees, provided it has used due care in selecting such employees, while in only three states, namely, Rhode Island, Alabama and Minnesota, have the courts held the contrary. In the first named state, after the decision holding such corporations liable, the legislature changed the rule by statute, so that now it is the law in only two states that a charitable corporation is liable for injuries received by a beneficiary through the negligence of its employees, unless it appears that such corporation was negligent in selecting such employees.

It would unduly prolong this opinion to review or cite all the cases decided on this question, but the following are some of the leading cases wherein it has been held that there was no liability under facts similar to those set out in the special answer in the case at bar. *Powers* v. *Massachusetts Homeopathic Hospital* (1901), 109 Fed. 294, 47 C. C. A. 122, 65 L. R. A. 372; *Paterlini* v. *Memorial Hospital Assn.* (1914), 241 Fed. 429; *Jensen* v. *Maine Eye & Ear Infirmary* (1910), 107 Me. 408, 78 Atl. 898, 33 L. R. A. (N. S.) 141; *Downes* v. *Harper Hospital* (1894), 101 Mich. 555, 60 N. W. 42, 25 L. R. A. 602, 45 Am. St. 427; *Taylor, Admr.,* v. *Protestant Hospital Assn., supra; Gable* v. *Sisters of St. Francis* (1910), 227 Pa. St. 254, 75 Atl. 1087, 136 Am. St. 879; *Schloendorff* v. *New York Hospital* (1914), 211 N. Y. 125, 105 N. E. 92, 52 L. R. A. (N. S.) 505, Ann. Cas. 1915C 581; *Hearns* v. *Waterbury Hospital* (1895), 66 Conn. 98, 33 Atl. 595, 31 L. R. A. 224; *Adams* v. *University Hospital* (1907), 122 Mo. App. 675, 99 S. W.

453; *McDonald* v. *Massachusetts General Hospital* (1876), 120 Mass. 432, 21 Am. Rep. 529; *Parks* v. *Northwestern University* (1905), 218 Ill. 381, 75 N. E. 991, 2 L. R. A. (N. S.) 556, 4 Ann. Cas. 103; *Lindler* v. *Columbia Hospital* (1913), 98 S. C. 25, 81 S. E. 512; *Fordyce* v. *Woman's, etc., Assn.* (1906), 79 Ark. 550, 96 S. W. 155, 7 L. R. A. (N. S.) 485; *Abston* v. *Waldon Academy* (1906), 118 Tenn. 24, 102 S. W. 351, 11 L. R. A. (N. S.) 1179; *Fire Ins. Patrol* v. *Boyd, supra; Duncan* v. *Nebraska Sanitarium, etc., Assn.* (1912), 92 Nebr. 162, 137 N. W. 1120, 41 L. R. A. (N. S.) 973, Ann. Cas. 1913E 1127; *Cook, Admr.,* v. *John N. Norton Memorial, etc.* (1918), 180 Ky. 331, 202 S. W. 874, L. R. A. 1918E 647; *Burdell* v. *St. Luke's Hospital* (1918), 37 Cal. App. 310, 173 Pac. 1008; *Mikota* v. *Sisters of Mercy* (1918), 183 Iowa 1378, 168 N. W. 219; *Weston's Admr.* v. *Hospital, etc.* (1921), 131 Va. 587, 107 S. E. 785, 23 A. L. R. 907; *Morrison* v. *Henke* (1916), 165 Wis. 166, 160 N. W. 173; *Wharton* v. *Warner* (1913), 75 Wash. 470, 135 Pac. 235; *Nicholson* v. *Hospital Assn.* (1916), 97 Kans. 480, 155 Pac. 920, L. R. A. 1916D 1029; *Bishop Randall Hospital* v. *Hartley, supra; Barnes* v. *Providence Sanitarium, supra.*

The leading cases holding the contrary doctrine are: *Glavin* v. *Rhode Island Hospital* (1879), 12 R. I. 411, 34 Am. Rep. 675; *Tucker* v. *Mobile Infirmary Assn.* (1915), 191 Ala. 572, 68 So. 4, L. R. A. 1915D 1167; *Mulliner* v. *Evangelischer, etc.* (1920), 144 Minn. 392, 175 N. W. 699.

The cases which hold that a charitable institution is not liable in a case like the one at bar base their holdings upon several different grounds. Some hold that the property of the charity constitutes a trust fund for a specific purpose, and that such fund cannot be diverted from the purposes of the trust to recompense beneficiaries for injuries received by the negligence of

employees.   Some hold that public policy is best served by encouraging such institutions and preserving their funds for the purposes originally intended.   Some hold that the doctrine of *respondeat superior* does not apply because the employees are not engaged in any work for the profit or benefit of the corporation.   Some hold that one who voluntarily becomes a beneficiary of a public charity impliedly agrees to waive any liability for the negligence of the employees and that such a relation is created as exempts the charity from liability for the acts of its servants.

Although the courts, in the cases cited above, have disagreed as to the better reason for the rule, yet, with the three exceptions heretofore noted, they do agree that such institutions should be exempt from liability to one who is a beneficiary.   One of the best reasoned cases cited above and one that is cited with approval by many courts, is the case of *Powers* v. *Massachusetts Homeopathic Hospital, supra,* decided by the Circuit Court of Appeals of the First Circuit.

The facts in that case were strikingly similar to the facts in the case at bar.   In the case cited the plaintiff was a patient in defendant's hospital and while a patient she was burned by a hot water bottle being negligently placed next to her body by one of defendant's nurses, and left there for some time.   The plaintiff was what was known as a paying patient, having paid the defendant $14 per week.   After stating that defendant was a charitable hospital, the court held that the fact that plaintiff was a paying patient was immaterial and that a paying patient in a charitable hospital, as well as a nonpaying one, seeks and receives the services of a public charity.   On this point the court said:  "As has been said, the defendant was a charitable corporation; that is, a corporation organized exclusively for charity.   That the ministrations of such

a hospital should be confined exclusively to the indigent is not usual or desirable. Those of moderate means from necessity, and not a few rich people from choice, resort to great charitable hospitals for treatment, especially in surgical cases. Throughout the world this is the custom in these institutions, whether they are maintained by individual, religious, or municipal charity. From patients who are not indigent, a payment is commonly permitted or required. Commonly, and in the case at bar quite manifestly, this payment does not make pecuniary compensation for the services rendered. Those who make a considerable payment not infrequently receive in some respects a more expensive service than do those who make a small payment or none at all; but the payment required is usually calculated upon the patient's ability to pay, rather than upon the whole cost of the treatment he receives."

The court then reviewed a great many of the cases on the subject of liability of such institutions and based its conclusion that the defendant was not liable upon the following grounds: "One who accepts the benefit either of a public or a private charity enters into a relation which exempts his benefactor from liability for the negligence of his servants in administering the charity; at any rate, if the benefactor has used due care in selecting those servants. To paraphrase the illustration put by the learned judge before whom this case was tried, it would be intolerable that a good Samaritan, who takes to his home a wounded stranger for surgical care, should be held personally liable for the negligence of his servant in caring for that stranger. Were the heart and means of that Samaritan so large that he was able, not only to provide for one wounded man, but to establish a hospital for the care of a thousand, it would be no less intolerable that he should be held personally liable for the negligence of his servant in caring for

any one of those thousand wounded men. We cannot perceive that the position of the defendant differs from the case supposed. The persons whose money has established this hospital are good Samaritans, perhaps giving less of personal devotion than did he, but, by combining their liberality, thus enabled to deal with suffering on a larger scale. If, in their dealing with their property appropriated to charity, they create a nuisance by themselves or by their servants, if they dig pitfalls in their grounds and the like, there are strong reasons for holding them liable to outsiders, like any other individual or corporation. The purity of their aims may not justify their torts; but, if a suffering man avails himself of their charity, he takes the risks of malpractice, if their charitable agents have been carefully selected."

The question we are considering has never been directly decided in this state, but by analogy it would appear that this court has taken the view that there would be no liability under the facts in this case.

In *Pittsburgh, etc., R. Co.* v. *Sullivan* (1895), 141 Ind. 83, 27 L. R. A. 840, 50 Am. St. 313, it was held that a railway company was not liable for the negligence of one of its physicians whom it employed to treat an injured employee, and the court in that case cited several of the cases we have cited herein to sustain the holding. The reason given for the decision in this case, was that when the railroad company furnished such physician free of charge, it was only liable if it failed to exercise due care in making the selection, and having done so, it was not liable for his negligence in treating the employee.

In the case of *Williams* v. *City of Indianapolis* (1901), 26 Ind. App. 628, the Appellate Court held that the city of Indianapolis was not liable for the negligence of an employee of the City Hospital which resulted in

an injury to a patient, and in the opinion in that case the case of *Glavin* v. *Rhode Island Hospital, supra,* urged by appellee herein as announcing the rule that should be followed, was criticised and it was stated that under facts similar to those in the Rhode Island case, "the damages should be paid out of the pocket of the wrongdoer, and not from the trust fund."

Appellee cites the case of *Winona Technical Institute* v. *Stolte* (1909), 173 Ind. 39, as an authority for holding appellant liable in this case. In that case the defendant had employed a firm, for which the plaintiff worked, to repair the boilers in its heating and power plant, and while the plaintiff was working in one boiler the employees of the defendant negligently turned steam into the same severely scalding the plaintiff. There is a *dictum* in the opinion in the case suggesting that the defendant was not a charitable institution because its term of existence was limited to fifty years and it had $100,000 of capital stock, and that it charged persons who became students therein board and tuition. This *dictum* was expressly disapproved in the case of *Richards* v. *Wilson* (1916), 185 Ind. 335, heretofore referred to, wherein it was expressly held that said institution was a public charity and the fact that it charged the recipients of its bounty a small tuition fee and board, did not deprive it of its character as a charity.

But in the Stolte case said institution was held liable because the injury was to a person not a recipient of its bounty, and as authority for such holding cited many of the cases we have referred to herein, including the case of *Powers* v. *Massachusetts Homeopathic Hospital, supra,* from which we quoted above and wherein it is held that a charitable institution is liable to an outsider for negligence, but is not liable to one who is a bene-

ficiary of its bounty, if due care was used in selecting the employees.

We believe the rule that is sustained by the weight of authority and the best reason to be that a charitable institution or corporation is not liable to a beneficiary for an injury caused by the negligence of its employees, if it has used due care in selecting such employees, but that this exemption from liability does not extend to outsiders or third persons, although some courts hold that the exemption extends to all cases arising out of the negligence of employees.

The fact that the injured person was a pay patient is universally held not to render the institution liable. Many of the cases heretofore cited were brought by pay patients and in all such cases it was held that such fact did not create a liability. As was said in *Schloendorff* v. *New York Hospital, supra,* "Such a payment is regarded as a contribution to the income of the hospital to be devoted, like its other funds, to the maintenance of the charity." We are of the opinion that, under the facts alleged in the special answer heretofore referred to, appellant was not liable.

With the view we take of the law, it is not necessary to discuss the other alleged errors assigned, as most of them involve the question we have discussed, and the others may not arise again.

Judgment reversed, with instructions to the court below to overrule appellee's demurrer to the fourth paragraph of answer to the third paragraph of complaint, and for further proceedings not inconsistent with this opinion.