DAN NICHOLSON, Plaintiff in Error, v. GOOD SAMARITAN
HOSPITAL, Defendant in Error.

199 So. 344
En Banc
Opinion Filed December 20, 1940

*Albert S. Dubbin,* for Plaintiff in Error;
*McKay, Dixon & DeJarnette,* for Defendant in Error.

BROWN, J.—The plaintiff in error, plaintiff below, brought

this action against the Good Samaritan Hospital, a Florida corporation, for the recovery of damages alleged to have been sustained by his being severely burned by reason of the negligence of the nurses employed by the defendant in the care of the plaintiff. There were two counts in the declaration, the first of which, *inter alia,* alleged that: ". . . the defendant was in the business of conducting an infirmary and hospital for the treatment of patients requiring operations . . . and for a reasonable compensation said defendant undertook and promised to properly nurse and care for the plaintiff preparatory to and during a surgical operation which he then required and thereafter, until he had sufficiently recovered to leave the institution, and that while the plaintiff was so in said infirmary for such treatment and after he had been operated on for gall bladder trouble, the plaintiff suffered third-degree burns on both legs by reason of the negligence of one of the nurses employed in the care of the plaintiff and while said nurse was engaged in and about the duties of her employment . . ."

The second count alleges the same facts, but in addition alleges: ". . . that the plaintiff suffered third-degree burns on both legs by reason of said defendant's negligently entrusting the care of the plaintiff, while he was under an anaesthetic, to an incompetent nurse, and while said nurse was engaged in and about the duties of her employment; that the said burns were deeply inflicted on the inside of each of the plaintiff's legs, between the knee and the ankle; that by reason of the negligence of the said defendant, through its servant and employee, the said nurse, the plaintiff suffered the said serious injuries . . ."

There is no direct allegation that the defendant corporation did not exercise ordinary care in *employing* the nurse. The nearest approach to this is the allegation that defendant

negligently entrusted the care of plaintiff to an incompetent nurse.

To this declaration the defendant filed three pleas to each count, the second plea being as follows, to-wit: "And for a further plea, this defendant says that the Good Samaritan Hospital is an eleemosynary corporation and operates as a charitable institution and that being such it is not liable for a negligent act of an employee."

A demurrer to this second plea was overruled, and upon the plaintiff's refusal to plead over, the court entered final judgment, from which judgment a writ of error was taken, the plaintiff assigning as error the overruling of his demurrer to the second plea above quoted.

The question presented by the record is whether or not a corporation, operating a hospital as a charitable institution, providing free hospitalization for those unable to pay but charging those who are able to pay, is liable for the negligent act of a nurse employed by it, whereby a paying patient is injured as a proximate result of such negligence.

Counsel for the respective parties are substantially in agreement that this is the question presented for decision. Thus we are dealing with this specific question of liability; not with the enforcibility of a judgment if one is obtained, or the method of such enforcement.

This is a case of first impression in this jurisdiction.

There are a large number of decisions by courts of last resort in other States involving actions by patients against charitable hospitals to recover damages for injuries caused by the negligence of a servant of the charitable corporation. The authorities are numerous and conflicting, as to whether and under what circumstances a charitable corporation is liable in tort. It must be conceded that the numerical weight of authority lies with the defendant in favor of

exempting charitable institutions from all liability for the torts of their servants. For a review of the authorities, see Tucker v. Mobile Infirmary Assn., 191 Ala. 572, 68 So. 4, L. R. A. 1915D, 1167; Roosen v. Peter Bent Brigham Hospital, 235 Mass. 66, 126 N. E. 392, 14 A. L. R. 563, 572; Love v. Nashville Agricultural & Normal Institution, 146 Tenn. 550, 243 S. W. 304, 23 A. L. R. 887; Taylor v. Flower Deaconess Home & Hospital, 104 Ohio St. 61, 135 N. E. 287, 23 A. L. R. 900; Weston's Adm'x., v. Hospital of St. Vincent of Paul, 131 Va. 587, 107 S. E. 785, 23 A. L. R. 907, 923; Bachman v. Young Women's Christian Ass'n., 179 Wis. 178, 191 N. W. 751, 30 A. L. R. 448, 455; St. Vincent's Hospital v. Stine, 195 Ind. 350, 144 N. E. 537, 33 A. L. R. 1361, 1369; Hamburger v. Cornell University, 240 N. Y. 328, 148 N. E. 539, 42 A. L. R. 955; St. Mary's Academy v. Solomon, 77 Colo. 463, 238 P. 22, 42 A. L. R. 964; Roberts v. Ohio Valley General Hospital, 98 W. Va. 476, 127 S. E. 318, 42 A. L. R. 968; Williams' Adm'x., v. Church Home, 223 Ky. 355, 3 S. W. (2d) 753, 62 A. L. R. 721, 724; Greatrex v. Evangelical Deaconess Hospital, 261 Mich. 327, 246 N. W. 137, 86 A. L. R. 487, 491; Sheehan v. North Country Community Hospital, 273 N. Y. 163, 7 N. E. (2d) 28, 109 A. L. R. 1197, 1199. The annotations accompanying the above cited cases are quite thorough. See also 13 R. C. L. 944-948; 11 C. J. 377; 10 Am. Jur. 687, et seq.

It must also be conceded that the declaration, tested by the rules obtaining in ordinary cases not involving charitable institutions, shows a right of action, but the defendant seeks exemption from liability on the ground that it is engaged in the business of conducting a charitable hospital.

The arguments usually given for exempting charitable institutions from tort liability have been summed up by the Minnesota Court as follows:

"That the funds of such institutions are held in trust for specific charitable purposes and should not be diverted to pay damages for negligence; that the better public policy is to hold them exempt; that they serve the same purpose as governmental agencies and should come under the same rule; that one who accepts benefits by becoming a patient, student, or beneficiary of the institution impliedly consents to hold it exempt or to waive any claim for negligence of its servants; that the doctrine of *respondeat superior* does not apply to them; that their employees are not, in legal sense, servants of the organization." Geiger v. Simpson Methodist-Episcopal Church of Minneapolis, 219 N. W. 463, 174 Minn. 389, 393, 62 A. L. R. 716.

The fact that many different courts reach the same conclusion on a given question is strong proof of the correctness of the decision, and any court may well pause and carefully consider before deciding any question contrary to the weight of authority, but a stronger precedent is established when many different courts use the same reasoning to reach the same conclusion, which is not the case with reference to the question now before us. This question was first presented to the English courts in the early part of the 16th century and has been continually before the courts of this country since the McDonald case was decided in 1876, wherein the doctrine of an English case was followed, which English case was subsequently departed from in the land of its birth. See McDonald v. Mass. General Hospital, 120 Mass. 432, 21 Am. Rep. 529. The diverse arguments quoted above, and the variety, and sometimes inconsistent, reasons advanced by the various courts to reach the same conclusions in regard to this question, indicate sincere attempts to rationalize a result which is not based upon any thoroughly satisfying legal principle.

The rule frequently relied upon for exempting charitable

institutions from tort liability is that the funds of such institutions are held in trust for specific purposes and should not be diverted to pay damages for negligence. If accepted, this "trust fund theory" would logically exempt a charitable institution from all liability, either to a patient of the institution, an employee, or a stranger. But, as shown by the numerous cases cited in the annotation in 14 A. L. R. 575, the weight of authority holds that a charity is not exempt from liability for injuries negligently inflicted upon strangers. See also the annotation in 109 A. L. R. 1199, citing cases adhering to this view. Nor does the exemption apply when an employee of the institution is injured. The same annotation states that "the weight of authority holds a charity liable for injury to a servant through negligence in the performance of some duty owing to him." Also the weight of authority is to the effect that a charitable institution is liable for its negligence in selecting its employees. It must use due care to employ competent servants. Thus the weakness of the trust fund theory is at once apparent. On principle, it would seem that a charitable trust is either exempt from liability for negligence in all cases or none. The Supreme Court of Nevada in Bruce v. Y. M. C. A., 51 Nev. 372, 277, p. 798, p. 802, in a brilliant analysis, flatly repudiates the trust fund theory, stating in part:

"A flood of cases might be cited holding that a charitable institution is liable for its negligence in the selection of its employees, for the negligence of its employees to strangers, or for some other reason. Every decision so holding, no matter how astutely the court may seek to evade the real question—that is, the charitable trust theory—is in fact, where the question is presented, a denial of that doctrine, for, as we have said, in substance, a charitable institution is either exempt or it is not. No sophistry, no refinement

of argument, can consistently hold that a charitable institution is exempt in the one case and not exempt in the other."

The argument sometimes advanced in favor of exemption to the effect that the employees of a hospital, not operated for the benefit of its donors or officers, are not, in legal sense, servants of the organization, because they do not work for the benefit or profit of their employer, will not stand the test of close analysis. If the employees are not servants of the hospital corporation or organization, the doctrine of *respondeat superior* would of course have no application and there would be no liability for injuries to strangers, or any one else. Whether or not such employees of the hospital are servants of the hospital is dependent upon the nature of the duties and obligations assumed by the hospital, in furtherance of which its servants are employed, and not upon the nature of the hospital itself, whether eleemosynary or otherwise. See 10 Am. Jur. 699, where conflicting decisions on the point are cited.

As to the argument that such charitable institutions serve the same purposes as governmental agencies, and should be exonerated from liability for that reason, which a few of the cases hold, it is stated in Sessions v. Thomas D. Dee Memorial Hospital Ass'n., 94 Utah 460, 78 P. (2d) 645, text 653, that the above reason for exemption is but another way of stating that it would be a good public policy to exempt them from liability. See also 10 Am. Jur. 698.

We turn now to the consideration of exemption from liability based on the ground of public policy—that it is contrary to public policy to permit institutions, inspired and supported by benevolences and who devote their assets and energies to the relief of the sick and needy, to be held liable for the payment of a claim for damages resulting from negligence of a servant of the charitable institution. This argument in support of the exemption of charitable

institutions, which is advanced by some of the decisions, and which is closely akin to the trust fund theory, would seem to be less vulnerable to attack than most other theories which have received judicial sanction.

In A. C. L. R. R. Co. v. Beazley, 54 Fla. 311, 45 So. 716, 14th headnote, it is stated:

"Public policy is variable, the very reverse of that which is the policy of the public at one time may become public policy at another; hence no fixed rules can be given by which to determine what is public policy. . . . It is the province of the court to expound the law only, not to speculate upon what is the best, in its opinion, for the advantage of the community, hence the public policy of a State or nation should be determined by its Constitution, laws and judicial decisions; not by the varying opinions of laymen, lawyers or judges as to the demands of the interests of the public."

While our Constitution exempts charitable corporations from taxation, nothing appears in the Constitution, statutes or judicial decisions of this State with regard to the exemption of charitable institutions from liability for the torts of their servants. However, we do find set out in the organic law of our State the following:

"All courts in this State shall be open, so that every person for any injury done him in his lands, goods, or person or reputation shall have remedy, *by due course of law, and right and justice shall be administered without* sale, *denial,* or delay." (Italics supplied.) Declaration of Rights, Sec. 4, Constitution.

Thus it would appear that the public policy of this State as enumerated by its Constitution, is to put justice "by due course of law" above or before charity. As stated by the Court in Sheehan v. North County Community Hospital, 273 N. Y. 163, 7 N. W. (2d) 28: ". . . to impose liability

is to beget careful management; and that no conception of justice demands that an exception to the rule of *respondeat superior* be made in favor of the resources of a charity and against the person of a beneficiary injured by the tort of a mere servant or employee functioning in that character."

There is no doubt but that the public has an interest in the establishment and maintenance of charitable institutions, whose beneficient value is generally recognized and appreciated, but it also has an interest in obliging corporations undertaking the performance of charitable duties, vitally affecting the lives and health of our citizens, to perform them carefully, and therefore the public also has an interest in this matter of exempting a charitable corporation from liability for its negligence. A charitable institution should be just before being charitable or generous. Turnage v. New Bern Consistory No. 3 (N. C.), 3 S. E. (2d) 8. Tucker v. Mobile Infirmary Ass'n., 191 Ala. 572, 68 So. 4; L. R. A. 1915D, 1167.

The quotation from Sheehan v. North Country Community Hospital, *supra,* recognizes the fact that to exempt charitable institutions from liability for the torts of their servants is to create an exemption to the well-founded and salutary doctrine of *respondeat superior,* which doctrine is in this State so much a part of "due course of law," referred to in the above quoted section of our Constitution, as to require its recognition in cases of this kind in the absence of legislation to the contrary. There is no legal principle which would justify this Court in making such an exception, in view of the above quoted constitutional provisions. The creation of such exemption is a legislative prerogative.

Some courts have denied recovery in cases against charitable institutions on the ground that the rule of *respondeat superior* should not be applied because the institution receives no private profit or benefit from the acts of

its servants. But a charitable hospital does undertake to perform certain important services which vitally affect the lives and the health of citizens who entrust themselves to their care, and whether they do so for pay or without pay, patients are entitled to rely upon the careful performance of the services which the institution undertakes to perform. And where pay patients are involved, this contention is hardly applicable. This precise question was presented in the Alabama case of Tucker v. Mobile Infirmary Ass'n., *supra*, the court holding the Mobile Infirmary Ass'n. liable for the tort of a nurse in negligently inflicting burns on a paying patient. To the reasoning of this able opinion, written by Mr. Justice GARDNER, now Chief Justice of the Alabama Supreme Court, we can add nothing, and we are inclined to adopt it as an expression of our own views. No more thorough review and legal analysis of the decisions dealing with this general question has come to our attention than the opinion of the Alabama Supreme Court in the case above referred to. One of the seven justices, Mr. Justice MAYFIELD, dissented, and wrote a vigorous dissenting opinion. The majority opinion and the dissenting opinion in the Alabama case advance and discuss very ably practically all possible arguments that can be made, both for and against the exemption of charitable hospitals from liability for the negligent conduct of their servants. The holding of the majority opinion in the Tucker case was followed by the Alabama Supreme Court in the more recent case of Alabama Baptist Hospital Board v. Carter, 226 Ala. 109, 145 So. 443.

It is not denied by counsel that a trust operated for profit is amenable to the doctrine of *respondeat superior*. And in the case of charitable hospitals which charge patients able to pay, the fact that this benefit or profit is used to promote the laudable charitable purposes of the hospital does not

negative the fact that an individual paying patient does pay into the hospital funds at rates fixed by the hospital as sufficient for services rendered to enable the hospital to realize a profit, thus entitling him to all the care and the fulfillment of all the duties undertaken by it or imposed upon such an institution by law when operated for profit, including the protection of the well recognized doctrine of *respondeat superior.* The profits from fees charged paying patients may be used to augment the funds applied to the care of charity patients, but this does not change the legal effect of the contract with the paying patient from which the law implies, in the absence of express agreement to the contrary, that he shall have the services of competent and careful servants. In Turnage v. New Bern Consistory No. 2, *supra,* the Court correctly applied this doctrine, holding that a Masonic Lodge was not immune (exempt) from an action for slander because it gave the net profits from its operation of a motion picture show to crippled children's hospitals. And in Sessions v. Thomas D. Dee Memorial Hospital, *supra,* the Court states:

"It is true that a hospital may not show dividends or profits 'accruing to any person or corporation,' but it may show an excess of intake over outgo over a series of years and absorb that recurrently in additions to the hospital or in other professed philanthropic ventures. In such case it could hardly be said that the hospital contributed toward the maintenance of the pay patient, and it could not the more be said because there could never under its articles be a distribution of any earned excess or division of the reversion among private individuals. I opine that the 'Good Samaritan' would not have been quite such a 'Good Samaritan' if he had said, 'Come to my hospital. I will charge you for your keep and attention and a little more to help build a new wing on my hospital, and for that I shall expect

the State to grant me immunity from the principle of *respondeat superior* which binds all businesses operated for profit.' In the parable the inn-keeper received his full pay. He was not doing charity. And I assume that if the inn had cared for some indigent guests without charge but fixed its charges for the paying guests so that it could come out even; it would not be said to be a charitable institution, although doing some charity. I apprehend that a hospital running a store for profit would not be exempt from responsibility for negligence of its servants in the store because it used the profit, if any, to build more hospitals."

In Geiger v. Simpson M. E. Church, 174 Minn. 389, 219 N. W. 463, 62 A. L. R. 716, it is said:

"It is a trite saying that charity begins at home. It may reasonably be said that charitable institutions must first fairly compensate those who are injured and damaged by the negligence of their officers and servants in the conduct of the affairs of such institutions before going farther afield to dispense charity and do good. Men and corporations alike are required to be just before being charitable. Charitable, benevolent, and religious institutions have been and are doing immeasurable service for the physical and moral welfare of humanity. Such institutions are rapidly growing in number, in resources, and influence. They should be encouraged, aided, and protected in carrying on their work to the full extent that it may be done without injustice to others. They are generally favored by being relieved, partly or wholly, from the burden of taxation. We do not think it would be good public policy to relieve them from liability for torts or negligence. Where innocent persons suffer through their fault, they should not be exempted. That rule, in the long run, will tend to increase efficiency and benefit them and the public, as well as persons

so injured. It is almost contradictory to hold that an institution organized to dispense charity shall be charitable and extend aid to others, but shall not compensate or aid those injured by it in carrying on its activities.

"No question of diversion of trust funds is presented in this case. In any event, that theory has been so weakened and limited by the decisions that it is not likely to hereafter have much practical application or importance."

In a note appended to this case, as reported in A. L. R., the editor says that the case if of interest "as indicating the dissatisfaction of the courts with the rule, which has been generally recognized that charitable institutions cannot be held liable for negligence."

If there is any reason for exempting a charitable hospital from its tort liability to non-paying charity patients, a question which we are not called upon to decide in this case, it is the giving and receiving of charity, and not the general nature of the institution. A patient paying a "reasonable compensaton," as in this case, cannot be said to be a recipient of charity.

The final assignment, upon which some of the more recent cases base their decision, following the case of Powers v. Mass. Homeopathic Hospital, 109 Fed. 294, 6 S. L. R. A. 372, is that one who accepts benefits by becoming a patient of a charitable institution impliedly assents to hold it exempt from liability on any claim based upon the negligence of its servants, or waives any such claim. In other words, that by accepting the benefit of the services of the institution, the patient assumes the risk of negligence. It is impossible to say that in fact, at least in most cases, the recipient of benefits has knowingly agreed to waive any claim for negligence. Such a waiver, if recognized at all, would be based purely on what we deem a farfetched theory, a fiction rather than a fact. Courts follow-

ing this theory have as a rule held that it extends only to recipients of benefits of charity, in whole or in part, and some of the others hold that it does not apply where the hospital has been negligent in the selection of its servants. Where a person pays a fair compensation for the services, room, etc., it is difficult to see why he should be held to have impliedly consented in advance to forego any claim for damages for negligence or mistreatment by the servants or the institution. See 13 R. C. L. 947; 10 Am. Jur. 694.

"While it is doubtless true that charities are to be encouraged and that public policy justifies their protection, even at some social disadvantage, there is also an element of social policy in preventing loss of earning power and property in the case of single individuals and families. If beneficiaries and servants of charities, and third persons, are killed or injured, or their property injured or destroyed, and no recompense is given from any source, the result is apt to be that a certain number of persons will become public charges and a feeling of social injustice will be implanted in the minds of the victims." Bogert, Trusts and Trustees, Vol. 2, Sec. 401.

In this connection, see also Sheehan v. North Country Community Hospital, *supra,* and Tucker v. Mobile Infirmary Ass'n., *supra.*

At the outset it was conceded that the numerical weight of authority was against holding charitable institutions liable for the torts of their servants in injuring patients, but since the Alabama decision above referred to, the modern trend appears to have been to enforce liability. Courts holding with the numerical weight of authority in recent years have done so "reluctantly," considering themselves bound by precedent. Quite a number of cases are cited in plaintiff in error's brief which support, in whole or in part, the position we have taken here.

"Many of the reasons which have been advanced have broken down entirely under attacks made upon them, and in jurisdictions thoroughly committed to some particular theory, the later cases tend to discard entirely all theory of special privilege, and decide the question of liability solely upon the relation between the parties, applying the rules applicable generally in cases of torts." Editorial note in Annotation: 14 A. L. R. 572, 573.

We find no sound and satisfying legal principle which, as we view it, forms a just basis for the exemption from liability claimed by the defendant below in the case at bar. We say this with all due respect for the many able courts who have taken a contrary view on the questions involved. In this connection we are indebted to counsel for the respective parties for their excellent briefs, in which the authorities, pro and con, are comprehensively reviewed and analyzed.

While the learned circuit judge followed the weight of authority in other jurisdictions, we must, nevertheless, for the reasons above stated, reach a different conclusion. The judgment of the circuit court is accordingly—

Reversed.

TERRELL, C. J., WHITFIELD, BUFORD and CHAPMAN, J. J., concur.

Justices THOMAS and ADAMS not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.