ERNESTO CARRASQUILLO ET UX., Plaintiffs, Appellees-Appellants, *v.* AMERICAN MISSIONARY ASSOCIATION ET AL., Defendants, Appellants-Appellees.

No. 8608. Argued February 18, 1943.—Decided May 5, 1943.

James R. Beverley, R. Castro Fernández, and José López Baralt for appellants-appellees. Virgilio Brunet for appellees-appellants.

Mr. Justice Travieso delivered the opinion of the court.

The defendant association established several years ago, in the city of Humacao, a Hospital known as the "Ryder Memorial Hospital," in which all kinds of diseases are treated and operations and childbirth cases are handled.

The plaintiff, Conchita L. de Carrasquillo, who was about to give birth, entered the defendant's hospital on December 1, 1938, after having agreed to pay the sum of $40 as compensation for the services which the defendant agreed to render to her.

In the complaint filed by Mr. and Mrs. Carrasquillo it is alleged that due to the unskillfulness, incompetency, and negligence of the defendants, Dr. Bierley and his wife, and of Dr. R. Panzer, employees of the defendant, the baby born to the plaintiff suffered the same day of its birth serious burns produced by hot water, from which it is still suffering intense physical pain. In the first cause of action $20,000 was claimed for the damages caused to the infant, and in the second $10,000 was claimed for the physical suffering and mental anguish of the parents, $500 for expenses of medical services, plus costs and attorney's fees.

The defendants answered, denying all the essential allegations of the complaint, and as special defenses they alleged:

1. That the defendant association has never had as its object or purpose profits or earnings; that they maintain the hospital at Humacao for charitable purposes, and that a great number of insolvent patients receive medical assistance, hospitalization, and medicines free from it; that persons of means pay a sum which is fixed proportionate to their financial condition; and that the income that the hospital has on this account scarcely covers 50 per cent of its expenses.

2. That the defendant association contracted for the services of the other defendants and its nurses after a careful investigation of their professional ability, experience, and reputation.

3. That the burns suffered by the child were due to an inevitable accident, lamentable and disgraceful, but without any negligence on the part of the doctors and nurses.

The present appeal has been taken by the defendants against the judgment by which they were ordered to pay $5,365.50 plus costs and $500 as attorney's fees. They also alleged that the trial court erred in entering judgment against the defendant, the American Missionary Association, disregarding the decision of this court in *Candal et al.* v. *Sociedad Española de Auxilio Mutuo,* 37 P.R.R. 811; in entering judgment against the other three defendants, when the evidence showed that they were not guilty of negligence; in granting to the plaintiffs compensation for mental suffering and anguish; in granting to the plaintiffs the amount of $1,500 to submit the child to a plastic surgery operation; in not admitting in evidence, nor giving any probative value, to the express waiver of compensation for damages made by the plaintiff Ernesto Carrasquillo; and in subjecting the defendants to the payment of costs and attorney's fees.

The plaintiffs have also appealed, charging the court below solely the error of having dismissed the first cause of action, by which Carrasquillo and his wife claimed the sum of $20,000 as compensation for the damages suffered by the child.

The essential facts, gathered from the transcript of evidence, which contains 465 pages, are in brief as follows:

When the baby was born it was placed in a temporary cradle, in which one of the hospital nurses had placed two rubber bags with hot water, to keep the recently born baby warm. That same nurse, Petra Díaz, with Dr. Panzer, attended Mrs. Carrasquillo at the birth. Dr. Panzer took the baby in his arms, handed it to the nurse, Norberta Rodríguez, who placed it in the cradle. The baby remained in the cradle from five to fifteen minutes until it was taken to the nursery for its first bath. And it was then and there

that the hospital employees realized that the baby was burned. It is a clearly established fact that the burns suffered by the baby were produced by the boiling water that was put inside the rubber hot water bags.

We agree with the lower court in that what happened can not be called an unavoidable accident. The exercise of reasonable care by the nurses who participated in fixing the cradle and by the doctor in charge of waiting on the patient and the recently born baby, in determining whether the cradle was at the proper temperature, would have certainly avoided the regrettable accident.

 We shall now consider the questions raised by defendants-appellants' assignments of errors.

1. Is the American Missionary Association liable for the damages caused by the negligence or lack of care of the nurses and doctors employed in its hospital at Humacao?

The defendant Association contends that it is not and, in support of its alleged immunity, cites the opinion of this court in *Candal* v. *Sociedad Española de Auxilio Mutuo, supra,* in which it was decided that the owners and directors of a private hospital, which has been organized and functioned for non-pecuniary purposes, were not liable for the damages caused by negligence in the diagnosis and treatment of a sick person, on the part of a physician-surgeon who had been selected after a careful investigation of his professional ability, experience, and reputation; and that the mere fact that in one case a patient is charged a modest price for a room in a charity hospital and a reasonable price for certain radiographies, is not sufficient to change a charitable institution into a commercial establishment or enterprise.

In the instant case the evidence showed that while it is true that the defendant Association was organized exclusively for religious and educational purposes, it is also true that at the Ryder Memorial Hospital most of the patients that

are hospitalized are charged a fee and that in numerous instances patients with means have been charged almost the same amount ordinarily charged in other hospitals and clinics in the city of Humacao. It was also proved that since 1935 the defendant Association has been entering into contracts with the Veterans' Administration for the hospitalization and medical treatment of veterans for $2 per day, exclusive of operations; and that at the Ryder Hospital insured automobile accident cases are treated, the insurance companies paying all the expenses. In *Candal* v. *Sociedad Española de Auxilio Mutuo* it was proved only that the plaintiff paid for the services rendered to her, but there was no other evidence to prove that at the Auxilio Mutuo the practice was followed, as in the Ryder Hospital, of charging to persons of means who go there. That was the reason why it was held that the evidence was not sufficient in that case to change a charitable institution into a commercial establishment or enterprise. The instant case is therefore easily distinguishable from the *Candal* case. In the instant case it was proved by the testimony of eight or nine witnesses that at the Ryder Hospital patients were charged in accordance with their economic ability and that the plaintiff paid $40 for the first ten days of his wife's hospitalization.

The above-established distinction would be enough to decide that the defendant association is responsible for the negligence of its employees, by having turned itself into a commercial enterprise, since it followed the practice of charging patients of means for services rendered to them at its hospital. But the instant case involves a fundamental question which deserves consideration and decision so as to establish definitely the rule to be followed in this jurisdiction.

Are charitable corporations or associations liable for the damages caused strangers by the negligence of their employees?

Few questions have been as much argued and decided in as many contradictory ways as the one just raised. The majority of the decisions handed down by state courts hold that charitable institutions are liable for the damages caused by the negligence of its employees to strangers. The state of the jurisprudence with regard to cases of damages caused to a patient of an institution has been described by Mr. Justice Rutledge of the United States Court of Appeals for the District of Columbia (now Associate Justice of the Federal Supreme Court), in his brilliant opinion in *President and Dir. of Georgetown College* v. *Hughes,* 130 F. (2d) 810, in the following terms:

"Paradoxes of principle, fictional assumptions of fact and consequence, and confused results characterize judicial disposition of these claims. From full immunity, through varied but inconsistent qualifications to general responsibility is the gamut of decision. The cases are almost riotous with dissent. Reasons are even more varied than results. These are earmarks of law in flux. They indicate something wrong at the beginning or that something has become wrong since then. They also show that correction, though in process, is incomplete.

"On the other hand, scholarly treatment outside the courts is almost uniform. There is general agreement of such opinion in support of liability and against immunity. Legal scholarship finds an important function not only in research and instruction, but as the most effective agency for constructive criticism of judicial thought and action. Great names in law rest on this foundation, some as revered as any made so by the judicial function itself. . . . Therefore, when opinion among scholars who are not judges is uniform or nearly so and that among judges is in high confusion, the former gives direction to the law of the future, while the latter points presently in all directions. In such circumstances scholarly opinion has more than merely persuasive effect. It is the safest guide for jurisdictions where the question has never been determined."

The general rule of law is that a person is liable for all the damages he may cause to another through his negligence or tortious conduct. Immunity is the exception.

Section 1802 of the Civil Code establishes the action to recover damages caused by default or negligence of another person. And §1803 provides that: "owners or directors of an establishment or enterprise" will be liable "for the damages caused by their employees in the service of the branches in which the latter may be employed or on account of their duties."

Is the Ryder Memorial Hospital, in accordance with the facts and circumstances proved by the evidence, a commercial establishment or enterprise, and as such liable for the damages caused by their employees in the exercise of their duties?

In the case of *Vélez* v. *Llavina,* 18 P.R.R. 634, it was decided, and we copy from the syllabus, that:

"In order that an automobile may be considered as devoted to the business of a common carrier it is necessary that the owner thereof employ the same regularly in the business of transporting passengers, conveying any one who pays the corresponding price. The fact that the owner of a private automobile hires it to certain friends, but not to everybody, does not indicate that his automobile is devoted to the business of a common carrier."

In applying the rule of *Vélez* v. *Llavina* to the case of *Candal* v. *Sociedad Española de Auxilio Mutuo,* this court was compelled to decide that evidence to the effect that one patient was charged for a room and radiographies was not sufficient to change a charitable institution into a commercial enterprise.

Applying this same rule to the facts proved in the instant case, it is an unavoidable conclusion that a hospital that habitually dedicates itself to the hospitalization and medical treatment of patients, and that renders these services to any patient who will pay the agreed price, and that contracts to render services upon payment to veterans, is and should be considered as a commercial establishment or enterprise for the purpose of the provisions of §1803 of the

Civil Code. The fact that in the same institution services are rendered free to insolvent persons does not deprice it of its character of a commercial establishment or enterprise, in the same manner as a transportation company does not lose its character of commercial enterprise because of the fact it transports in its vehicles, free of charge, a number of persons.

It being decided that the Ryder Memorial Hospital is a commercial establishment or enterprise and as such liable for the damages caused by the negligence of its employees, we should now consider if that liability exists exclusively with regard to those patients of means who pay the just and reasonable value of the services rendered, or if it also can be claimed by those who pay a special reduced price and by those who accept and receive the services as an act of pure and disinterested charity.

The Court of Appeals for the District of Columbia, through Mr. Justice Rutledge, says in the case already cited:

"Generally also charity is no defense to tort. For wrong done, it is no answer ordinarily to say, 'He did not pay and was not bound to pay for the service. I gave it to him.' One who undertakes to aid another must do so with due care. Whether the Good Samaritan rides an ass, a Cadillac, or picks up hitchhikers in a Model T, he must ride with forethought and caution. He is not relieved because it is his driver rather than himself who lapses into carelessness. Nor does it matter that the doer of good is a corporation, if the act of gratuitous service is fairly incidental to the business. Railroad companies, through their employees, may and often do undertake to do more for the passenger than the strict bargain or duty of carriage requires. But if they depart from normal conduct in doing it, they pay for the deviation. Charity and gratuity generally go to motive, not to duty . . . Charity suffereth long and is kind, but in the common law it cannot be careless. When it is, it ceases to be kidness and becomes actionable wrongdoing."

" * * * * * * *

"When an individual human being undertakes not simply an isolated act, but a habit or business of charity, without incorporating or casting it in the form of a trust, he does not acquire immunity.

Possibly half the medical service rendered today is charity practice. So is a large share of legal service. Some physicians, and perhaps some lawyers, spend half or more of long and useful careers ministering to the sick and the troubled without pay. Many more do so habitually, but less extensively. Yet they do not have leave to be careless, notwithstanding their kindness is continuous or habitual rather than casual or occasional. Nor would they if it were conducted through or in association with others. Only when an individual institutionalizes his enterprise formally, as by incorporation or possibly by creating a trust, does he succeed in casting the whole burden of its negligent operation on those it injuries.

"It is a strange distinction, between a charitable institution and a charitable individual, relieving the one, holding the other, for like service and like circumstances. The hospital may maim or kill the charity patient by negligence, yet the member of its medical staff, operating or attending without pay or thought of it, dare not lapse in a tired or hurried moment. (Citing authorities.) The institution goes free. The physician pays. Yet they render a common service, which the hospital could not furnish without him. The physician, cannot incorporate. He cannot shield behind a trust. He cannot escape *respondeat superior*. His partner answers if he does. So it is with the lawyer.

"The basis of the distinction cannot be charity. It cannot be habit or continuity in charity. If it were either, individuals would be free upon proof of the fact, or institutions would be liable upon proof of the contrary in the particular instance. . . . . Institutions have a survival value no individual possesses. They withstand vicissitudes individuals cannot meet. It is probable that charitable ones resist demise more stoutly than business ones. Certainly they incur no greater risks. If charity should exempt either institutions or individuals, it should be latter. But there should be no distinction. Unless motive is to replace duty, both should be liable and liable alike. Institutions should shoulder the responsibilities all other citizens bear. They should minister as others do, within the obligation not to injure through carelessness."

After a long and interesting discussion about the historic antecedents of the doctrine of the immunity of charitable institutions, about the state of confusion that prevails among the state decisions on the matter, and about the reasons for

and against immunity, the Court of Appeals for the District of Columbia goes on to say:

"Abolition of immunity as to the paying patient is justified as the last short step but one to extinction. Retention for the non-paying patient is the least defensible and most unfortunate of the distinction's refinements. He, least of all, is able to bear the burden. More than all others, he has no choice. He is the last person the donor would wish to go without indemnity. . . . He should be the first to have reparation, not last and least among those who receive it. So stripped of foundation, the distinction falls. . . . The immunity should go and the object of the charity should be placed on a par with all others."

The instant case being one of a patient who paid to the hospital the required amount of $40 for ten days of hospitalization, that is $4 daily; and taking into account that from the defendant's own evidence it appears that in the Ryder Memorial Hospital patients of means are admitted and charged different prices in accordance with the facilities furnished and the economic position of the patient, it is our opinion that the court a quo did not err in deciding that the Association is and should be liable for the damages suffered by the baby and by its parents as a consequence of the negligence of its employees. The fact that in the Ryder Memorial Hospital free services are rendered to insolvent patients, is not a circumstance that can produce the legal effect of relieving the defendant from liability. See Nicholson v. Good Samaritan Hospital, 133 A.L.R. 809.

Whether an institution which, like the defendant's, renders services to poor patients and to patients of means is liable to patients who receive the services free, is a question not involved in the present appeal and which we are therefore not compelled to decide.

█ 2. The conclusion to which the court below arrived with regard to Dr. Panzer's negligence is supported by the evidence. Since he was the doctor who attended the patient, he was under a duty to look out for the health and safety

of the mother and for that of the newly-born baby. He had the right to expect that at his first appearance on the stage of life he would not meet with such gross negligence, as a consequence of which he is marked and disfigured for the rest of his life. Mrs. Carrasquillo's was a normal delivery. Nothing happened of extraordinary character to divert the Doctor's attention and to prevent him from fulfilling his duties of examining that everything had been duly fixed for the reception and protection of the child that was about to be born. A light inspection of the cradle by the side of the mother's bed would have disclosed the danger to Doctor Panzer, and would have avoided the damage. None of the persons therein present, all employees of the defendant, fulfilled this simple duty, since by merely feeling the place where the baby's body was to rest, they would have discovered the excessive temperature of the hot water bags. Dr. Mulgrage, himself a witness for the defendant and its employee, testified during the trial that "the physician, in my opinion, has the duty of seeing that the routine has been followed, has been observed, and it is also his duty to make sure and see that the nurse complies with her duty." There was no error in weighing the evidence.

The evidence discloses that the defendant Dr. Bierley held at the time of the accident the position of Acting Medical Director. Dr. Panzer worked there as a hospital intern under the direction and supervision of Dr. Bierley. It was not Dr. Bierley but Dr. Mulgrage who admitted and employed Dr. Panzer to work as an intern in the hospital. Dr. Bierley, after being informed by Dr. Panzer that the birth did not offer any difficulty, withdrew to fulfill other duties, leaving Dr. Panzer in charge of the patient. Under such circumstances it is our opinion that the court below committed error in adjudging Dr. Bierley guilty of negligence. The evidence does not disclose that Dr. Bierley did not fulfill any of his duties as Medical Director. Neither was the inferior

court justified in holding Mrs. Bierley liable for the negli-. gence of the doctor and of the nurse in charge of the patient..

■ Did the court below err in granting compensation to · the plaintiffs for mental suffering and anguish?

The action exercised by the plaintiffs in their alleged "second cause of action" is the one granted by §60 of the Code of Civil Procedure to the parents to recover damages for injuries caused to a minor child, or for his death, when the injury or the death is due to the illegal act or the negligence of another person.

Said section does not state what are the damages that the parents are entitled to because of the death of a child. In *Hance* v. *Méndez,* 52 P.R.R. 323, the father of the child claimed as compensation for moral suffering and material loss the sum of $10,000. This court reversed the judgment by which the complaint was dismissed and entered another "adjuging the defendant to pay to the plaintiff damages which under all the circumstances, it seems just to fix at $3,000 together with the costs of the suit."

In *Sánchez* v. *Sucesión J. Serallés,* 53 P.R.R. 77, the father of the child claimed damages for the death of his daughter, and alleged that this caused him and his wife mental suffering, upsetting their nervous systems, that he estimated at $10,000. The district court entered judgment against the defendants, ordering them to pay $3,000 and when it was appealed this Supreme Court affirmed the judgment.

In *López* v. *American Railroad Co.,* 50 P.R.R. 1, 25, 26, Sandalio López claimed damages because of the death of his son. The defendant company appealed from the judg-· ment whereby it was ordered to pay the sum of $1,500, and · in support of its appeal it alleged that the court below had erred in taking into account, as elements of damage, the· moral and mental anguish of the plaintiff. We decided, on the grounds of our decisions in the cases of *Maldonado* v. *Puerto Rico Truck Co.,* 31 P.R.R. 709, and *Horta* v. *P. R.*

*Railway, Light & Power Co.*, 36 P.R.R. 668, that the mental suffering caused the parents of a child who died as a consequence of an illegal act, can be taken into consideration as an element of damages.

In the recent case of *Castro* v. *González*, 58 P.R.R. 369 decided in March 1941, the parents of the child ended their complaint by alleging that the death of their daughter had caused them "extraordinary mental and moral suffering," and expenses, which they estimated in the sum of $25,000. This amount consisted of the following items; funeral expenses, $350; the cost of a tomb, $2,000; medical treatment for Mrs. Castro, $250; and moral suffering of the plaintiff's parents, $22,400. The defendant was ordered to pay $12,000 compensation, and he took an apeal to this court. Considering the errors assigned by the appellant, we decided: that the one with reference to the $2,000 item for the cost of the tomb was not committed, since the trial court in finally deciding the case discharged this amount because it was not recoverable; and that the $250 item claimed for medical fees paid because of the sickness of the child's mother, was not recoverable and the error, if it had existed, "does not cause the reversal of the judgment, since other items of damages are claimed, and the problem will be solved by not considering said item while fixing the amount of damages which finally should be granted to the plaintiffs." The items with regard to the tomb and the medical fees thus eliminated, there remained as material damages specifically alleged, the $350 item for funeral expenses. This court, taking into consideration the provisions of §61 of the Code of Civil Procedure, to the effect that "in every action under this and the preceding section such damages may be given as under all the circumstances of the case may be just," believed that the amount of $12,000 granted by the court below was excessive; and after considering the practice followed in this jurisdiction and all the circumstances in the case, modified the judgment appealed from by reducing the compensation to $5,000.

In the instant case the plaintiffs have alleged and proved that both of them, and especially the mother of the child, suffered not only mental anguish but also severe physical pain; and that Mrs. Carrasquillo had to be submitted to medical treatment for the nervous state in which she was left as a consequence of seeing the suffering of her child. It will be enough to look for a few minutes at the two photographs admitted in evidence, which were taken when the baby was already a year old and the burns had healed, to realize how intense most have been the physical and moral suffering of the parents in seeing the child in that pitiful state, which the father himself describes in his testimony by saying that he looked like "a little roasted pig."

Considering all the circumstances in the case and what we shall later decide with regard to the dismissal of the first cause of action, it is our opinion that the judgment should be modified as to the second cause of action, by reducing the amount that the defendant association and that the defendant Dr. R. Panzer, should pay jointly to the plaintiff in equal parts, to $2,000 plus $365.50 for medical fees and medicines for the cure of the baby and of the mother plus costs.

■ 4. We agree with the appellants that the trial court erred in granting to the parents the amount of $1,500 so that they may pay the expenses of a plastic surgery operation to which the child should be submitted. This error, nevertheless, will not have the effect of reversing the judgment. It will be enough, in order to cure it, that we shall deduct said amount, as we have already done, from the amount of compensation granted to the parents upon the second cause of action, and that we grant it directly to the child, for his use and benefit. See *Clarke* v. *Eighth Ave. R. Co.*, 37 A.L.R. 1; and *Rockwood* v. *Lansburgh*, 293 P. 792.

■ 5. During the trial the defendants offered in evidence a document similar to those which, in accordance with the practice followed in the Ryder Memorial Hospital, are

signed by a patient upon entering the hospital. It appeared signed on December 1st, 1938, by Ernesto Carrasquillo, as the husband of Conchita López de Carrasquillo; and at the foot of the same the following paragraph appears:

"Permision is hereby granted to Dr. Panzer to operate and to perform (*sic*) any or all those acts that in his opinion should be necessary for the welfare of the patient, my wife. Also to relieve the Ryder Memorial Hospital from any liability that may occur (*sic*) after this date of 12/1/38."

The plaintiff objected to its admission, alleging that even though the signature therein is Carrasquillo's, the document has been altered and is not in the same conditions that it was when the plaintiff delivered it to the Hospital; that the document did not previously have, and it now has, crossed-out names and written blank spaces, some in ink and others in pencil; that Carrasquillo signed it when it had blank spaces. The court decided not to admit the document, so long as it was not first shown who had crossed out the words and filled in the blank spaces, but stating that it would admit it if it was shown that all of this was done upon the request of Mr. Carrasquillo. The testimony of Carrasquillo with regard to the fact that he signed the document while it was unfilled was corroborated by that of the Director of the Hospital, who testified that the practice was that the blanks were filled in by the nurses or any other employee. The defendant did not offer any evidence to show who made the amendments and crossed out the words. The document appears in the record as evidence offered and not admitted.

The conditions fixed by the court below for the admission of the document were, in our opinion, reasonable, and not having been complied with by the party who offered it in evidence, the court did not err in refusing to admit it. But even if the document had been admitted in evidence, the stipulation by which the hospital is relieved from liability for the negligence of its employees would have never had

the effect desired by the defendant, because said stipulation is contrary to public morals, and therefore void. *Hales* v. *Raines,* 162 Mo. App. 46; Brothers, Medical Jurisprudence, pp. 143–144.

If anything was waived by Carrasquillo, it was the right to a cause of action that his wife could have in the event that damage was caused to her personally as a consequence of the negligence of the hospital, doctors, and nurses. He could not waive any right to a cause of action that the yet unborn child could have for the damages caused to him at the time of his birth. This waiver, in the event that it had been made, would have also been void because it had not been previously authorized by the corresponding district court.

■■■ We shall now consider the only question raised by the plaintiffs' appeal. Did the lower court err in dismissing the first cause of action?

In the complaint it is alleged and in the answer it is admitted that the plaintiffs are married. The baby born during this marriage was therefore the legitimate child of the plaintiffs and as such was under the *patria potestas* of the father.

The prevailing law establishes two kinds of actions arising from fault or negligence: the one provided by §§1802 and 1803 of the Civil Code in favor of the person directly prejudiced by the guilty or negligent act; and the one granted by §§60 and 61 of the Code of Civil Procedure to the parents of the injured person.

In the first cause of action exercised in the instant case it was alleged that due to the negligence of the defendants "the said minor Ernesto Luis Carrasquillo López suffered the same day of his birth serious burns . . . and still is suffering from said burns"; and "that the treatment to which he is still being submitted produces to the said minor a strong physical pain, because of which the parents of said minor, plaintiffs herein, estimate that said minor has suffered damages to the amount of $20,000."

There is no doubt that the complaint would have been more correct if there had been alleged therein, with regard to the first cause of action, that the plaintiff Ernesto Carrasquillo appears as father with *patria potestas* over his infant son. But nevertheless, it is evident that the action exercised by the first cause of action is the one granted by the law to the child, and that the amount claimed is not for the parents, who have no right to claim it for themselves, but that it is for the exclusive benefit and use of the minor, as compensation for the damages caused him. The only cause of action that the parents have is the one that they have exercised by the second cause of action. This was so understood by the defendants themselves when they alleged as the third reason of their demurrer, that a misjoinder of causes of action existed "since the first cause of action is one instituted *for the injury that it is alleged was suffered by the infant daughter (sic) of the plaintiffs and, the second, is for certain alleged physical pain and mental anguish that the plaintiffs alleged that they suffered as parents of said minor.*" (Italics ours.)

Taking into consideration the allegations and the nature of the first cause of action and the evidence introduced, no other conclusion can be arrived at but that the parents, plaintiffs herein, instituted the first cause of action for the exclusive use and benefit of the minor. As was said in *Bennett* v. *Bennett,* 91 N. W., 409, where the guardian instituted an action in which he simply limited himself to say in the title: "Levy Bennett, Guardian of Emery W. Tuttle", without stating in the complaint that he sued as guardian: "We may fairly so construe his pleading notwithstanding his failure to say expressly that he sues as guardian." To hold the contrary would be to allow a mere technicality to prevent us from doing substantial justice. See *Gigante* v. *Alvarez,* 48 P.R.R. 484, and *Sánchez* v. *González,* 55 P.R.R. 337.

The reason for the rule which requires that every action shall be instituted in the name of the real party in interest

is to avoid that the defendant be subjected to future litigation for the same cause of action. The obligations of the complaint, the conclusions at which we have arrived in the course of this opinion and the conditions imposed on the defendants by the judgment that we shall enter, constitute absolute protection for the defendants.

The court below erred in dismissing the first cause of action. We shall therefore modify its judgment, sustaining the first cause of action in favor of the minor, and granting him $3,000 compensation, which the defendants American Missionary Association and Dr. R. Panzer shall jointly pay the clerk of the District Court of Humacao for the exclusive use and benefit of the minor, in accordance with law.

We do not think that we should interfere with the exercise of discretion of the lower court in ordering the defendants to pay $500 for attorney's fees. Considering all the circumstances in the case, the amount granted is reasonable.

With regard to the defendants Dr. Bierley and his wife, the complaint should be dismissed.

Subject to the stated modifications, the judgment appealed from is affirmed.

Mr. Associate Justice De Jesús did not participate herein.

ON MOTION FOR REHEARING

July 14, 1940

MR. JUSTICE TRAVIESO delivered the opinion of the court.

Among the several grounds alleged by the defendants in support of their motion for reconsideration of the judgment which we entered on May 5, 1943, we shall only discuss the following one:

"(b) Because it grants the plaintiffs-appellees as parents of the child compensation for the mental and physical suffering SUFFERED BY THEM as a consequence of their seeing their son suffering, there being no law to authorize said compensation."

Section 60 of the Code of Civil Procedure, as amended by the Act of July 20, 1921 (Act No. 77, Laws of 1921, p. 702), grants to the legitimate father or legitimized natural father and the legitimate or natural mother the right to institute an action for the injury or death of a minor child, when such injury or death is caused by the wrongful act or neglect of another. Said section also provides that the action may be instituted against the person causing the injury or death, and if such person is employed by another person who is liable for his conduct, against the latter also.

As can be seen, the cause of action granted by the law to the parents is not limited to those cases in which the minor has lost his life. The parents have the right to recover damages also, in those cases in which the minor has suffered personal damages.

In this jurisdiction damages have been granted to the parents for extraordinary mental or moral suffering suffered by them due to the death of a child under age. (*Castro* v. *González*, 58 P.R.R. 369, *Sánchez* v. *Sucesión Serrallés*, 53 P.R.R. 77, and *Hance* v. *Méndez*, 52 P.R.R. 324.) Said §60 of the Code of Civil Procedure does not specify what are the damages that a father can claim for the injury caused to his child or for his death.

If the plaintiffs herein would have had the right to claim damages for moral and physical suffering, in the event that the minor had died as a consequence of the burns, we can not see any reason why they should be denied the right to recover compensation like that we have granted them for the physical and moral suffering experienced from seeing for many days the minor's burned body and for the constant pain that they must continue to suffer from contemplating their son's body full of ineradicable scars, mutilated, and forever marked.

The case of *Rivera* v. *Reyes*, 31 P.R.R. 420 is not applicable herein.

The other questions raised in the motion for reconsideration have been fully discussed in the principal opinion, and we deem it unnecessary to repeat herein the reasons upon which we predicated our judgment.

The motion is overruled.

Mr. Chief Justice Del Toro did not participate herein.