GERALDINE DURNEY, an infant by her next friend, Edward J. Durney, *v.* ST. FRANCIS HOSPITAL, INC., a corporation of the State of Delaware.

(*August* 8, 1951.)

RICHARDS, P. J., sitting.

*Thomas Herlihy, Jr.*, for the Plaintiff.

*Southerland, Berl and Potter* and *Vincent A. Theisen* for the Defendant.

Superior Court for New Castle County, No. 160, Civil Action, May Term, 1947.

RICHARDS. P. J.:

In order to pass upon the defendant's motion for summary judgment, it is necessary to consider three questions which are raised by the pleadings in this case.

First, is the defendant, St. Francis Hospital, Incorporated, organized, conducted and maintained, as shown by the pleadings in this case, a charitable institution?

Second, is a corporation not organized for profit and with no capital stock, which conducts and maintains a hospital as a charitable institution, exempt from liability for the negligence of its agents or employees such as nurses, when such negligence results in injury to a patient in said hospital, if the hospital was not negligent in the selection and training of such agents or employees?

Third, if a corporation not organized for profit and with no capital stock, which conducts and maintains a hospital as a charitable institution, is exempt from liability for the negligence of his agents or employees, does the fact that a patient in said hospital pays for the treatment and service which he receives change the rule of liability and make the hospital liable for the negligence of its said agents or employees?

The objects and purposes for which the defendant was incorporated, as shown by Article 3 of its Certificate of Incorporation are, "the construction, furnishing and equipping, and the maintenance of a Hospital in the City of Wilmington, to provide surgical and medical services and care and nursing for persons in need of the same, and to do all things necessary or incidental to carrying out the above objects and purposes". Section 4 of said Certificate of Incorporation further sets forth that it is not organized for profit and no capital stock will be issued. The conditions of membership being "interest and zeal in the furtherance of the charitable work for which this corporation is organized and particularly active interest in the construction and maintenance of said Hospital".

It appears from the affidavits that defendant derives its funds from state appropriations, public and private contributions and amounts received from those who are able to pay for its benefits, all of which is applied in furtherance of its charitable purposes.

The hospital is open to all persons regardless of race, creed or financial ability, and the corporation has never been required

to pay a franchise tax to the State, or a filing fee upon filing its annual report.

A satisfactory definition of a legal charity, or a charitable institution, which would cover all circumstances would be hard to give. In the case of *Jackson v. Phillips*, 14 *Allen* 539, 556, 96 *Mass.* 539, 556, Judge Gray after tracing the history of charities from the *Statute of* 43 *Elizabeth* states that a charity in a legal sense, may be more fully defined as, "a gift to be applied consistently with existing laws, for the benefit of an indefinite number of persons either by bringing their minds or hearts under the influence of education or religion, by relieving their bodies from disease, suffering or constraint, by assisting them to establish themselves in life or by erecting or maintaining public buildings or works or otherwise lessening the burdens of government".

It is true that the defendant receives compensation for its services from those who are able to pay, and the pleadings show that it received compensation from the plaintiff, but as already stated its certificate of incorporation states that it was not organized for profit and the conditions of membership are interest and zeal in the furtherance of charitable work.

Applying the definition of charities as quoted from the case of *Jackson v. Phillips* to the provisions of the defendant's certificate of incorporation and the supporting affidavits, it seems clear that the defendant is a charitable institution.

The question of whether a non-stock, non-profit, charitable corporation, which conducts and maintains a hospital by public and private contributions, and funds received from those who are able to pay, is liable for injury to a patient caused by the negligence of its agents and employees, such as nurses, has never been decided by the Court in this State.

It is a very important question and many decisions have been rendered upon it by the various courts throughout the

country. These decisions are not only very conflicting but many of them are accompanied by dissenting opinions.

As early as 1846, the English Court in the case of *Feoffees of Heriot's Hospital v. Ross,* 12 *Clark & Fin.* 507, 513, 8 *English Reprint* 1506, held that funds bequeathed for the founding and maintenance of a hospital were trust funds and could not be used for the payment of damages sustained by those who claimed to have been injured by the action of the trustees. The theory of the case being, that to give damages out of a trust fund would apply it to a purpose which the donor of the fund did not have in view, and divert it to a completely different purpose.

This trust fund theory had been previously adopted in the case of *Duncan v. Findlater,* 6 *Clark & Fin.* 894, 7 *Eng. Reprint* 934. It was rejected however, in *Mersey Docks and Harbor Board Trustees v. Gibbs, L. R.* 1 *H. L.* 93, 11 *Eng. Reprint* 1500 which was decided in 1866, and has not been recognized by the English Courts since that time.

The question first arose in this country in the case of *McDonald v. Massachusetts General Hospital,* 120 *Mass.* 432, 21 *Am. Rep.* 529, which was decided in 1876. The object for which the defendant was incorporated in that case was to provide a general hospital for sick and insane persons. It was not organized for profit, had no capital stock, and its funds were derived mainly from public and private charities. The Court held the defendant had no funds which could be charged with any judgment which the plaintiff might recover, except those which were held subject to the trust of maintaining the hospital, consequently he could not recover, citing the English case of *Holliday v. St. Leonard's,* 11 *C. B.* (*N. S.*) 192. The Court did hold, however, that it was the duty of the defendant to use due and reasonable care in the selection of its agents.

The principle was next laid down in the State of Maryland, in the case of *Perry v. House of Refuge,* 63 *Md.* 20, 52 *Am. Rep.* 495, in which the Court held that damages could not be recov-

ered from a fund held in trust for charitable purposes. In this case the case of *Feoffees of Heriot's Hospital v. Ross, supra,* was cited. Both the Massachusetts and Maryland Courts apparently overlooked the fact that the English cases relied upon had been overruled and were not then considered as authority in that country.

Among the numerous other cases in this country which have held charitable institutions exempt from liability for the negligence of their employees and agents, on the ground, that the funds which they receive are held in trust for charitable purposes are:

*Fire Ins. Patrol v. Boyd,* 120 Pa. 624, 15 A. 553, 1 L. R. A. 417; *Boeckel v. Orange Memorial Hospital,* 108 N. J. L. 453, 158 A. 832, affirmed 110 N. J. L. 509, 166 A. 146; *Brown v. St. Luke's Hospital Association,* 85 Colo. 167, 274 P. 740; *Emery v. Jewish Hospital Association,* 193 Ky. 400, 236 S. W. 577; *Gamble v. Vanderbilt University,* 138 Tenn. 616, 200 S. W. 510, L. R. A. 1918C, 875; *Parks v. Northwestern University,* 218 Ill. 381, 75 N. E. 991, 2 L. R. A. (N. S.) 556; *Hill v. President and Trustees of Tualatin Academy,* 61 Or. 190, 121 P. 901; *Mississippi Baptist Hospital v. Moore,* 156 Miss. 676, 126 So. 465, 67 A. L. R. 1116; *Union Pacific Railway Co. v. Artist,* (8 Cir.) 60 F. 365, 23 L. R. A. 581.

Many of the reported cases which recognize the trust fund theory hold the defendant exempt from liability for negligence on the ground that it is a public charity. *Fire Ins. Patrol v. Boyd, supra; Boeckel v. Orange Memorial Hospital, supra; Taylor v. Protestant Hospital Ass'n,* 85 Ohio St. 90, 96 N. E. 1089, 39 L. R. A., N. S., 427.

Another line of cases take the position that one who accepts the benefits of a public charitable institution impliedly waives its liability for negligence. *Powers v. Massachusetts Homoepathic Hospital,* (1 Cir.) 1901, 109 F. 394, 65 L. R. A. 372; *Cook v. John N. Norton Memorial Infirmary,* 180 Ky. 331, 202 S. W. 874, L. R.

*A.* 1918E, 647; *Thomas v. German General Benevolent Society,* 168 *Cal.* 183, 141 *P.* 1186.

There are jurisdictions in which it has been held that those who are designated as strangers, including visitors, persons who are delivering articles to charitable institutions and many others in similar situations are entitled to recover from the institution for the negligence of its agents and employees. *Cohen v. General Hospital Soc. of Connecticut,* 113 *Conn.* 188, 154 *A.* 435; *Winona Technical Institute v. Stolte,* 173 *Ind.* 39, 89 *N. E.* 393; *Bougon v. Volunteers of America,* (*La. App.* 1934) 151 *So.* 797; *Marble v. Nicholas Senn Hospital Ass'n,* 102 *Neb.* 343, 167 *N. W.* 208; *Daniels v. Rahway Hospital,* 160 *A.* 644, 10 *N. J. Misc.* 585; *Cowans v. North Carolina Baptist Hospital, Inc.,* 197 *N. C.* 41, 147 *S. E.* 672.

In some states the courts have held that paying beneficiaries can recover from charitable institutions. *Tucker v. Mobile Infirmary Ass'n,* 191 *Ala.* 572, 68 *So.* 4, *L. R. A.* 1915D, 1167; *Nicholson v. Good Samaritan Hospital,* 145 *Fla.* 360, 199 *So.* 344, 133 *A. L. R.* 809; *Robertson v. Executive Committee of Baptist Convention,* 55 *Ga. App.* 469, 190 *S. E.* 432; *Henderson v. Twin Falls County,* 56 *Idaho* 124, 50 *P.* 2d 597, 101 *A. L. R.* 1151.

When the charitable instiution is protected by insurance the courts of Colorado and Tennessee have held that it is liable for its negligence. *McLeod v. St. Thomas Hospital,* 170 *Tenn.* 423, 95 *S. W.* 2d 917; *O'Connor v. Boulder Colorado Sanitarium Ass'n,* 105 *Colo.* 259, 96 *P.* 2d 835, 133 *A. L. R.* 819.

The first decision in this country holding that a charitable institution was liable for the negligence of its employees on the same basis as a private corporation organized and operated for profit, was handed down by the Supreme Court of Rhode Island in the case of *Glavin v. Rhode Island Hospital,* 12 *R. I.* 411, 34 *Am. Rep.* 675. The facts of that case are very similar to those of the pending case. The Court reviewed the English cases above referred to and the Massachusetts case of *McDonald v. Massachu-*

*setts General Hospital, supra.* The manner in which it considered the question is expressed in these words: "It may be that some of the corporate property, the buildings and grounds for example, is subject to so strict a dedication that it cannot be diverted to the payment of damages. But, however, that may be, we understand that the defendant corporation is in the receipt of funds which are applicable generally to the use of the hospital, and following the decision in *Mersey Docks v. Gibbs,* we think a judgment in tort for damages against the corporation can be paid out of them. Indeed, we cannot see why these funds are not as applicable to the payment of damages for tort as to the payment of counsel for defending an action for such damages. Both payments are to be regarded as incident to the administration of the trust".

The principle laid down in the Glavin case above referred to, which was decided in 1879, has been recognized by numerous other decisions including, *Tucker v. Mobile Infirmary Ass'n,* 191 *Ala.* 572, 68 *So.* 4, L. R. A. 1915D, 1167; *Humphreys v. San Francisco Area Council, Boy Scouts of America,* (*Cal. App.* 1942) 129 *P.* 2d 118; *Silva v. Providence Hospital,* (1939) 14 *Cal.* 2d 762, 97 *P.* 2d 798; *Mulliner v. Evangelischer Diakonniessenverein of Minnesota Dist.,* (1920) 144 *Minn.* 322, 175 *N. W.* 699; *Nicholson v. Good Samaritan Hospital,* (1940) 145 *Fla.* 360, 199 *So.* 344, 133 *A. L. R.* 809; *Dillon v. Rockaway Beach Hospital & Dispensary,* (1940) 284 *N. Y.* 176, 30 *N. E.* 2d 373; *Sheehan v. North County Community Hospital,* (1937) 273 *N. Y.* 163, 7 *N. E.* 2d 28, 109 *A. L. R.* 1197; *Turnage v. New Bern Consistory No.* 3, (1939) 215 *N. C.* 798, 3 *S. E.* 2d 8; *Rickbeil v. Grafton Deaconess Hospital,* (1949) 74 *N. D.* 525, 23 *N. W.* 2d 247, 166 *A. L. R.* 99; *Sisters of the Sorrowful Mother v. Zeidler,* (1938) 183 *Okla.* 454, 82 *P.* 2d 996; *Brigham Young University v. Lillywhite,* (10 *Cir.,* 1941) 118 *F.* 2d 836, 137 *A. L. R.* 598, *certiorari denied* (1941) 314 *U. S.* 638, 62 *S. Ct.* 73, 86 *L. Ed.* 512; *President and Directors of Georgetown College v. Hughes,* (1942) 76 *U. S. App. D. C.* 123, 130 *F.* 2d 810; *Foster v. Roman Catholic Diocese of Vermont,* (1950) 116 *Vt.* 124, 70 *A.* 2d 230.

In the recent case of *Moore v. Moyle,* (1950) 405 *Ill.* 555, 92 *N. E.* 2d 81, the Supreme Court of Illinois held that a charitable institution is not exempt from liability for the tortious acts of its agents or servants, but that a judgment recovered against it could not be collected from its trust fund. Beyond that, the rule of respondeat superior was held to be in effect.

Also the Court of Civil Appeals of the State of Texas, in the case of *Medical & Surgical Memorial Hospital v. Cauthorn,* (1949) 229 *S. W.* 2d 932, held that a charitable corporation is liable for the negligence of its managing officers when a patient was injured by their failure to supply proper equipment.

In *Harper on "The Law of Torts", at Section 294,* is found the following comment: "The immunity of charitable corporations in tort is based upon very dubious grounds. It would seem that a sound social policy ought, in fact, to require such organizations to make just compensation for harm legally caused by their activities under the same circumstances as individuals before they carry on their charitable activities. The policy of the law requiring individuals to be just before generous seems equally applicable to charitable corporations. To require an injured individual to forego compensation for harm when he is otherwise entitled thereto, because the injury was committed by the servants of a charity, is to require him to make an unreasonable contribution to the charity, against his will, and a rule of law imposing such burdens cannot be regarded as socially desirable nor consistent with sound policy".

It is contended that the overwhelming weight of authority in this country is in favor of the exemption of charitable corporations from liability for the torts of their agents and employees. After reading many cases decided in the various states throughout the country, I am convinced that the contention is, at least, doubtful. The numerous distinctions made in the decisions certainly weaken their effect.

There is quite a difference between charitable institutions

today and those which existed when they were first held to be exempt from tort liability. Those which existed at that time were small and the funds which they had were not large, when compared with many which we find today whose funds are provided for by foundations and in some instances are unlimited.

The argument made in some of the earlier cases, that the funds of the institution would soon become exhausted, or that persons would not make donations for charitable purposes if they were used to pay damages, does not apply with the same force as it did at that time.

There can be no doubt that the trend of the decisions today, and the views expressed in many of the law journals, is in favor of imposing full liability upon charitable corporations for the torts of their agents and employees.

I am convinced that the general principle which makes every person responsible for his own legally careless action, should apply with equal force to charitable corporations. The doctrine of respondeat superior also applies to charitable corporations and makes them responsible for the negligent acts of their agents and employees, when such acts are clearly incidental to the business of the corporation, to the same extent that individuals are. This is true whether the beneficiary pays for the service which he receives or not. It is unreasonable to hold that persons who do not pay for the service which they receive from a charitable corporation, cannot recover for injury resulting from the negligent acts of those for whose acts the corporation is responsible, when such acts are incidental to the business of the corporation.

I can see no difference whether the tortious act relied upon by the plaintiff was committed as alleged in the first count of the statement of claim, or whether it was a breach of the express contract as alleged in the second count.

As far as the facts before me disclose, the equipment used in the delivery room, also that used in the nursery, was furnished

by the defendant. Likewise the nurses who assisted the doctor and took care of the children after their birth were provided by defendant.

 If the burns which it is alleged the plaintiff received were caused by the negligence of the defendant in failing to provide proper equipment in the delivery room and nursery of its hospital, or if said burns which it is alleged the plaintiff received were caused by the negligence of the agents or employees of the defendant, the defendant is liable for the injury resulting from said burns.

 Whether the defendant was negligent by failing to provide proper equipment in the delivery room or nursery of its hospital, or whether the agents or employees of the defendant were negligent by failing to properly care for plaintiff, are questions of fact for the jury.

The motion for summary judgment is denied.